**TAM NU LA, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Appellee.**

**No. C14–88–474–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 28, 1989.

Oct. 26, 1989.

Dan Hennigan, Houston, for appellant.

Ingrid J. Blackwelder, James H. Miller, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a summary judgment. Appellant, Mrs. Tam Nu La, filed suit to recover proceeds and the insurer answered with affirmative defenses. Appellant brings two points of error alleging the trial court erred in granting appellee's motion for summary judgment after having denied two such motions by appellant. We reverse and remand.

Appellant is the widow of Nguu Huynh, ("Huynh"), a Houston businessman who was stabbed to death during an apparent robbery on October 29, 1986. Mr. Yok Foo Choy, ("Choy") was an agent of Aetna Life Insurance Company, ("Aetna"), authorized to solicit applications for life insurance on behalf of Aetna. Choy made several attempts to sell Huynh life insurance, the last of which was on October 14, 1986. On that occasion Huynh signed the Aetna application form and wrote his check in the amount of $122.18 payable to Aetna and postdated October 30, 1986. The application form itself was never dated. Appellant was named in the application as the primary beneficiary of a policy having a face amount of $100,000, when issued, with a double indemnity clause.

Following Huynh's death on October 29, 1986, appellant submitted her claim to Aetna for accidental death benefits in the amount of $200,000. On December 17, 1986, Aetna notified appellant of its review of the information provided by Choy and that it had determined to decline Huynh's original application, returning the uncashed check for $122.18.

In the suit below, appellant claimed benefits under temporary or interim insurance represented by the terms of the application which was delivered to Aetna through its agent, Choy. Aetna pled the affirmative defenses of: failure or lack of consideration; no contract in force at the time of death; and misrepresentation of material facts in the application by Huynh. Aetna submitted a motion for summary judgment based on non payment of the premium and on the ground of material misrepresentation in the application. Summary judgment was granted by the court below without giving any indication of the actual basis for sustaining the motion. Attached to this opinion are *appendix No. 1* entitled "Life Insurance Application," and *appendix No. 2* entitled "Agent's Report."

Appellant Tam asserts two points of error. In her first point of error, Tam submits that the trial court erred in granting Aetna's motion for summary judgment. In her second point of error, Tam submits that the trial court erred in denying Tam's motion for summary judgment.

A summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. Unlike an appeal following a trial on the merits, when reviewing the grant of a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. Instead, this court must view the evidence in favor of the nonmovant, resolving all doubts and indulging all reasonable inferences in favor of reversal of the summary judgment. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549 (Tex.1985); *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

At either the trial or appellate level, the question is not simply whether the nonmovant raised a material fact issue to defeat the motion. Rather, unless the movant proved beyond question it was entitled

to judgment as a matter of law, this court must remand the case for a trial on the merits. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828–829 (Tex.1970). The standards that must be applied when reviewing a summary judgment have been clearly mandated by the Texas Supreme Court in *Nixon v. Mr. Property Management,* 690 S.W.2d at 548:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.
3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management,* 690 S.W.2d at 548–549; *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589, 592–93 (Tex. 1975).

Further, this court must not consider evidence that favors the movant unless it is uncontroverted. *Great American Reserve Co. v. San Antonio Plumbing Supply,* 391 S.W.2d 41, 47 (Tex.1965). The judgment of the trial court cannot be affirmed on any grounds not specifically presented in the motion for summary judgment. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 675 (Tex.1979).

We will review the points of error in context of both of the two possible grounds for summary judgment: non payment of premium, and misrepresentation of material fact on the application.

## NON PAYMENT OF PREMIUM

The ultimate disposition of this issue is controlled by the applicable provisions of the Uniform Commercial Code which has been adopted in Texas and may be found in VERNON'S TEXAS CODES ANNOTATED, BUSINESS AND COMMERCE. U.C.C. § 3.802 provides in pertinent part:

."(1) Unless otherwise agreed where an instrument is taken for an underlying obligation ...

(2) ... the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment...."

TEX.BUS & COM.CODE ANN. § 3.802 (Vernon 1988).

There is no dispute that Huynh gave the check (instrument) to Aetna's agent on October 14, 1986. However, the language of Section 3.802 "where an instrument is taken for an underlying obligation," means something more than mere manual delivery. It imports delivery of the check with the intention of paying for the premium when presentment is due; it also imports acceptance of the check on condition that the check will be honored when presentment is due. *Canal–Randolph Anaheim, Inc. v. Moore,* 78 Cal.App.3d 477, 143 Cal. Rptr. 789, *reh'g denied,* 78 Cal.App.3d 477, 144 Cal.Rptr. 474 (1978).

Appellee contends that no payment was made by Huynh on October 14, 1986 for temporary life insurance coverage. Appellee's assertion is based upon the personal affidavit of an officer of Aetna who stated that he checked the records and made inquiries of Aetna employees and found that no payment for insurance on the life of Nguu Huynh was made during the life of Nguu Huynh, nor was any policy issued by Aetna on the life of Nguu Huynh.

Aetna's position is also founded upon the deposition and personal affidavit of Choy who stated that it was Huynh who had instructed Choy to postdate the check with the stated date of October 30, 1986; that Choy explained to Huynh that the temporary insurance coverage would not be activated until October 30, 1986. In his subsequent affidavit, Choy stated that on October 14, 1986, Huynh told Choy that Huynh then did not have the money to pay the premium but could pay the premium in a month; that Huynh instructed Choy not to deposit the check before first contacting Huynh on October 30, 1986, to find out if Huynh had enough money in the bank to

cover the check; Choy stated that Huynh's application was never submitted to Aetna for processing.

Appellant Tam contends that Huynh did pay for the premium. Tam provided the court below with the deposition and answers of the Custodian of Records of Ellington Bank. The bank's records show that Huynh maintained on deposit funds sufficient to honor the check at any time from October 14, 1986 when the check was delivered to Choy until October 31, 1986, after the check was payable on demand.

With respect to the life insurance application (*See appendix No. 1*), the final question on the application reads:

"13. Has payment been made? _X_ YES Amt. $122.18 ___NO"

The very next and final section on the application contains several sentences which commence as follows:

"IT IS MUTUALLY AGREED: (1) The statements and answers above are complete and true to the best of my knowledge and belief."

We note that the language contained in the above referenced sentence designated "(1)" appears to be operating in the capacity of a warranty relative to the answers provided to the thirteen immediately preceeding requests for information. The next sentence reads:

"(2) If payment made with application, Temporary Insurance for either Proposed Insured begins on the LATER of the following dates: (a) date of application; (b) date of last medical examination initially required by age and amount.".

With respect to subsection "(a)", appellant Tam stated, in her affidavit, that on October 14, 1986, her husband made application for term life insurance with Aetna; and that the application contained an agreement for temporary insurance coverage in the amount of $200,000.00 in the event of her husband's accidental death.

With respect to subsection "(b)" the record reveals that Huynh's application was designated "non-med," meaning no medical exam was required. (*See appendix No. 2*)

There is no dispute that it was the hand of Choy which actually wrote the responses to the questions presented on the application and that the only handwriting attributable to Huynh on this application is Huynh's signature.

It is also noted that Choy's signature appears adjacent to Huynh's on this application. Both signatures are situated directly below the previously mentioned final section on the application which states that the answers above are complete and true.

■ Aetna's summary judgment evidence as to Huynh's intent not to pay for the premium until October 30, 1986, is founded exclusively on Choy's affidavit and deposition. This evidence, however, constitutes a unilateral statement of Choy's belief as to the intent of Huynh. Issues of intent are best left to the fact finder for determination. *Major Investments, Inc. v. De Castillo*, 673 S.W.2d 276 (Tex.App.— Corpus Christi 1984, writ ref'd n.r.e.).

■ We conclude that there is a genuine issue of material fact as to whether Huynh intended the check to constitute conditional payment for the premium upon delivery so as to suspend his obligation to pay pursuant to U.C.C. 3.802(a)(2) or whether there was an agreement otherwise between Huynh and Aetna's agent to neither present the check for payment nor to submit the application for processing until October 30, 1986.

The disputed evidence, therefore, defeats both Tam's and Aetna's motions for summary judgment by both appellant and Aetna.

### MISREPRESENTATION ON THE APPLICATION

In the event the trial court's summary judgment was based upon Aetna's affirmative defense of misrepresentation on the application, we conclude that the summary judgment proof does not establish as a matter of law the affirmative defense of misrepresentation.

The affidavit of Mr. Richard Walsh, an Aetna underwriter, stated that Huynh indicated on his application that he had no life

insurance in force at all when, in fact, Huynh had approximately $1,700,000 in life insurance coverage with other companies at the time of his application.

Before an insurer may avoid liability on a life insurance policy on the basis of material misrepresentation, five elements must be pled and proved: (1) the representation by the insured; (2) the falsity of the misrepresentation; (3) reliance thereon by the insurer; (4) intent to deceive by the insured; (5) the materiality of the representation. *Mayes v. Massachusetts Mutual Life Ins. Co.*, 608 S.W.2d 612 (Tex.1980).

The alleged misrepresentation appears at Question 9 on the document entitled "AGENT'S REPORT." (*See appendix No. 2*). Question 9 and its response reads:

"9. Amount of life insurance in force on Proposed Insured.
All companies $0
Aetna $0"

■ Aetna further submits, by way of the underwriter's affidavit, that Huynh's alleged misrepresentation as to the existence of other insurance coverage appeared on Huynh's application. However, there is a genuine issue of material fact as to whether the document which contains the alleged misrepresentation, entitled "AGENT'S REPORT," is part of the document signed by Huynh which is entitled "LIFE INSURANCE APPLICATION" (*See appendices No. 1 and No. 2*) We note that the only signatory called for on the "AGENT'S REPORT" is that of an agent; and it is only Choy's signature which appears on this document. Consequently, there is an issue of material fact as to whether the alleged misrepresentation is even contained in Huynh's *application.*

There is no dispute that it was only Choy and not Huynh who actually wrote out and signed the responses to the questions contained in the "AGENT'S REPORT." Consequently, there is a material fact issue as to whether any of the statements which appear on the "AGENT'S REPORT" are attributable to Huynh.

Aetna asserts that the alleged misrepresentation was material to the risk and cites in its brief, *Inter–Ocean Insurance Co. v. Ross*, 315 S.W.2d 71, 73 (Tex.Civ.App.— Fort Worth 1958, no writ) to support its position that a statement in an insurance application regarding "the existence of other insurance is material as a matter of law and, if false, it voids the policy." *Id.* at 73. *Inter–Ocean* is inapposite because that case involved an application which stated that representations made by the applicant were for the purpose of obtaining insurance. The material parts of the application were recited in the *Inter–Ocean* opinion:

"I hereby apply to the Inter–Ocean Insurance Company, Cincinnati, Ohio, for a policy of insurance and for that purpose make the following statements....

6. Do you, or any member have hospital insurance? (If so, who and in what company and what amount?) No......

In applying to Inter–Ocean Insurance Company for this insurance I agree that it shall be based upon the above representation of facts. (signed) James S. Ross" *Id.* at 73

Contrary to the application form in *Inter–Ocean*, Huynh's alleged misrepresentation as to other insurance coverage is not signed by Huynh.

■ Contrary to the application form in *Inter–Ocean*, in the case before us there is no express statement contained in either the document entitled "LIFE INSURANCE APPLICATION" or that entitled "AGENT'S REPORT" that insurance shall be based upon the representation of facts contained in the application. There is no support in the record for Aetna's contention that the misrepresentation, if any, was material to the risk nor was it proved relevant to the activation of temporary or interim insurance represented by the terms of the application.

Consistent with our duty to indulge all reasonable inferences in appellant's favor, we hold that Aetna failed to establish the affirmative defense of misrepresentation as a matter of law.

We sustain appellant's first point of error and overrule her second point of error. The judgment of the trial court is reversed and the case remanded.

APPENDIX NO. 1

**Ætna**

☐ ÆTNA LIFE INSURANCE COMPANY  ☐ ÆTNA LIFE INSURANCE AND ANNUITY COMPANY, Hartford, CT 06156
LIFE INSURANCE APPLICATION

| | |
|---|---|
| 1. Proposed (Print Names — First, Initial, Last) Insured A. *NGUU   HUYNH* | Dates of Birth (M.-D.-Y.) ☒ Male ☐ Female  *11  05 51* |
| Proposed Insured B. | ☐ Male ☐ Female |
| Residence (No., Street, City, County, State, Zip) A. *77 East Edgebrook, Houston Harris* B. *Tx 77054* | Places of Birth *Vietnam* |
| Occupations & Duties Performed A. *Grocery store owner* B. | Social Security Numbers *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* ☐☐☐-☐☐-☐☐☐☐ |

2. Policy Information (Describe as in Manual)
a. Basic Plan: *Flexiterm*      ☐ Non-Participating    Amount
                   ☒ Participating    $ *100,000*
b. Waiver of Premium ☐ YES ☒ NO      Accidental Death ☒ YES ☐ NO    $ *100,000*
c. Other Benefits _____ $ _____
d. Make Automatic Premium Loan Provision operative, if available.    ☐ YES ☐ NO
e. If Participating, Dividend Option: ☐ Pay in Cash ☐ Reduce Prem. ☐ Paid-Up Ins. ☐ Accumulated ☐ Other
f. Beneficiary for Joint Policies will be the Surviving Insured unless otherwise requested herein.
g. Beneficiary for Individual Policies (Give Name & Relationship to Proposed Insured). Unless otherwise requested herein, payment is to be made to primary beneficiaries who survive the Insured, equally, or, if none survives, to contingent beneficiaries who survive, equally, or, if none survives, to Insured's estate.
Primary *Tant Nu La - wife* Contingent *Estate*
h. Policyowner will be Proposed Insured(s) unless otherwise requested.

3. Will life insurance or annuity in any company be replaced or modified if insurance applied for is issued? ☐ YES ☒ NO

| | Proposed Insured A | | Proposed Insured B | |
|---|---|---|---|---|
| | YES | NO | YES | NO |
| 4. A. Height *5* ft. *4* in., Weight *115* lbs. [B. Height ___ ft. ___ in., Weight ___ lbs. | | | | |
| 5. Have you within 2 yrs. flown as a pilot or engaged in vehicular racing, hang gliding or sky or scuba diving? (if yes, submit aviation or avocations supplement.) | ☐ | ☒ | ☐ | ☐ |
| 6. Do you plan foreign travel or residence? | ☐ | ☒ | ☐ | ☐ |
| 7. Have you, within 3 years, had motor vehicle moving violations or license suspended? | ☐ | ☒ | ☐ | ☐ |
| 8. Have you smoked any cigarettes within the past 12 months? | ☐ | ☒ | ☐ | ☐ |
| 9. Have you consulted a physician within 3 years? | ☐ | ☒ | ☐ | ☐ |
| 10. Have you ever had or been treated for: | | | | |
| a. Heart or lung disease, stroke or high blood pressure? | ☐ | ☒ | ☐ | ☐ |
| b. Cancer, diabetes, mental illness or any disease of the brain or nervous system? | ☐ | ☒ | ☐ | ☐ |
| c. Alcohol or drug use or any disease of the stomach, intestines, liver or kidneys? | ☐ | ☒ | ☐ | ☐ |
| 11. Have you, within 5 years, had insurance either refused or offered only with an extra premium? | ☐ | ☒ | ☐ | ☐ |

12. ADDITIONAL INFORMATION (Give details of YES answers for Proposed-Insured A or B).

13. Has payment been made? ☒ YES Amt $ *122 70* ☐ NO   Payment may not be accepted over age 65.

IT IS MUTUALLY AGREED THAT: (1) The statements and answers above are complete and true to the best of my knowledge and belief. (2) If payment made with application, Temporary Insurance for either Proposed Insured begins on the LATER of the following dates: (a) date of application; (b) date of last medical examination initially required by age and amount. Temporary Insurance ends on the EARLIEST of the following dates: (a) 60 days from date insurance begins; (b) date insurance begins on policy applied for; (c) date the Company notifies the applicant that the application of either Proposed Insured is declined. (Five days after mailing will be considered effective notice.) (3) No agent may alter the terms of the application or the policy or waive any of the Company's rights or requirements.

Signed at *Houston   Tx*    on (Mo.-Day-Yr.) _____
       (City, State)
                         (X) *Nguu Nuynh*
                         Signature of Proposed Insured A.
X *Yok Joo Chay*      X _____
Signature of Witness            Signature of Proposed Insured B.

CAT. 671126
PRINTED IN U S A

## APPENDIX NO. 2

| AGENT'S REPORT — USE THIS APPLICATION FOR AMOUNTS THROUGH $100,000 |
| --- |

### PERSONAL HISTORY INTERVIEW FORMATION

*Complete on every application and explain to Proposed Insured*

| Home Phone No. with area code | Time Zone E C M P | Business Phone No. with area code (713) 943-2403 | Time Zone E C M P |
| --- | --- | --- | --- |

Interview time (Mon-Fri 9 a.m. - 5 p.m. Eastern — when necessary to 9:30 p.m. Eastern)

Most convenient time and place to call

1st choice
☐ Morning  ☒ Afternoon  ☐ Evening  ☐ Home  ☐ Business

2nd choice
☐ Morning  ☐ Afternoon  ☐ Evening  ☐ Home  ☐ Business

### INFORMATION REQUIRED FOR UNDERWRITING AND POLICY ADMINISTRATION

1. Application Is: ☒ Non-Med. ☐ Paramed ☐ Medical

2. Indicate state of delivery and initial premium payment.
   *Texas*  122 ⁴/ᵗ

3. PREMIUM INFORMATION:
   ☐ Annual ☒ Semi-Annual ☐ Salary Deduction
   ☐ Quarterly ☐ Monthly ☐ Monthly Bank Plan
   Basic Premium $ _____ at insuring age **35**
   planned premium, if applicable $ _____ .
   Premium payor information
   Name *Nguu Huynh*
   Address *77 East Edgebrook
   #312, Houston Tx 77034*

4. Proposed Insured's estimated income $ *12,100*

   Estimated worth $ *50,000*

5. POLICYOWNER INFORMATION
   Name* *Nguu Huynh*
   Address (No. Street, City, State, Zip) *77
   East Edgebrook #312 Hou, Tx 77034*
   Social Security No.
   (If owner is a person) [5][7][2] [6][3] [9][1][4][0]
   Identification No.
   (If owner is not a person) [ ][ ] [ ][ ][ ][ ][ ][ ]
   *If Joint owners, enter only one name and show that owner's number.

6. How long have you known Proposed Insure
   *3 yrs.*

7a. Is this application in lieu of Group Conversion? ☐ YES ☒ NO
   b. Has a concurrent application been submit ted to Health Products within 30 days? ☐ YES ☒ NO

8a. Is the proposed insurance written for a:
   Business owner/Business ☐ or ·
   Personal Purpose ☒ ? (check one)
   b. The technique used in making this sale was
   Advanced Underwriting/Estate Analysis ☐
   Seminar Selling ☐
   Other ☒ (check one)

9. Amount of life insurance in force on Proposed Insured.
   All companies $ _____ 0
   Ætna $ _____ 0
   Market Office Code [ ][ ][ ]
   Agent's Name(s) and Code   Participation
   _____ [ ][ ][ ][ ] _____ %
   _____ [ ][ ][ ][ ] _____ %

### ADDITIONAL INFORMATION

### AGENT'S CERTIFYING STATEMENTS

|  | YES | NO |
| --- | --- | --- |
| 1. Do you know or have reason to believe that any existing insurance or annuity will be replaced or modified if this insurance is issued? | ☐ | ☒ |
| 2. If law requires, has Cost Disclosure Statement been given and will Cost Disclosure Policy Summary be delivered with the policy? | ☒ | ☐ |
| 3. If law requires, has Life Insurance Buyer's Guide been given or will it be delivered with the policy? | ☒ | ☐ |
| 4. Has the required Underwriting Notice been delivered to Proposed Insured? | ☒ | ☐ |

_____
(Mo-Day-Yr.)

X _____
Signature of Agent