**Jerry BATES and Brian Bates, Plaintiffs,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. H–94–3480.**

United States District Court, S.D. Texas.

May 28, 1996.

Thomas Clarke, Thomas Clarke & Associates, Houston, TX, for Plaintiffs.

Arthur M. Meyer, Jr. and J. David Apple, Brown McCarroll & Oaks Hartline, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Jackson National Life Insurance Company's ("Jackson National") Motion for Summary Judgment (# 22).

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that Jackson National's motion should be GRANTED IN PART and DENIED IN PART.

## I. *Background*

This is a suit brought by the beneficiaries of a life insurance policy to recover the policy proceeds. Plaintiffs Jerry Bates ("Jerry") and Brian Bates ("Brian") seek to collect the benefits of a $100,000.00 life insurance policy,

which was purchased by their deceased father, Jerry Samuel Bates ("Mr. Bates").

On October 30, 1991, Mr. Bates was examined by Dr. Harish K. Pariana ("Dr. Pariana"), who diagnosed Mr. Bates as having left phlebothrombosis—an inflammation of the deep veins in his left leg, which is indicative of a blood clot. Dr. Pariana advised Mr. Bates of his condition and prescribed him medications, Ecotrin and Disalcid, to keep his blood thin and to help reduce the inflammation and resulting pain. In order to rule out any other conditions or ailments from which he might have been suffering, Dr. Pariana ordered a health profile of Mr. Bates, which included a blood profile and a urinalysis. The blood and urine samples were taken in Dr. Pariana's office.

On November 1, 1991, Dr. Pariana examined Mr. Bates again. During this second examination, Dr. Pariana discussed with Mr. Bates the results of his blood and urine tests. Mr. Bates' blood profile revealed high glucose levels, which is indicative of diabetes, and the urinalysis showed signs of ketones, which are secreted only by diabetics. Based on the results of these tests, Dr. Pariana diagnosed and advised Mr. Bates that he had diabetes mellitus. In order to treat Mr. Bates' diabetic condition, Dr. Pariana prescribed an oral antidiabetic medication, Micronase, which enhances the secretion of insulin.

On November 12, 1991, Mr. Bates submitted an application to Jackson National for a $100,000.00 term life insurance policy. Mr. Bates completed the application during a meeting with Patricia M. Galloway ("Galloway"), an independent insurance agent. Mr. Bates answered the health questions contained in Part II of the application and signed it. According to Jackson National, Mr. Bates did not disclose to Galloway his recent examinations, treatments, or diagnoses by Dr. Pariana. In Part II, Question 1(a) and (b) of the application, Mr. Bates represented that within the past five years he had not consulted, been examined, or been treated by any physician or practitioner and that he had not submitted to an x-ray, electrocardiogram, or any laboratory test or study. Furthermore, in Part II, Question 2(b), (e), and (f) of the application, Mr. Bates represented that within the past ten years he had not been told that he had any disease or abnormality of the heart, blood, or blood vessels; that he had sugar or albumin in the urine; or that he had diabetes. Because Mr. Bates was only applying for $100,000.00 in coverage, a paramedic examination was not required by Jackson National.

Jackson National approved the application Mr. Bates submitted and issued him a life insurance policy on November 22, 1991. The application was attached to and made a part of the policy. Subsequently, the policy was delivered to Mr. Bates. After the policy was issued and delivered to Mr. Bates, Galloway went over the policy with him. According to a change of beneficiary request form dated December 11, 1991, Jerry and Brian were named as the primary beneficiaries of the policy.

On November 11, 1992, Mr. Bates died of a gun shot wound inflicted by an ex-lover of his girlfriend/common law wife. At the time of Mr. Bates' death, all premiums accrued under the policy had been paid. On December 2, 1992, Jackson National received a claim to the insurance proceeds from Jerry and Brian. Jackson denied liability under the policy on December 8, 1992. By letter dated February 26, 1993, Jackson National advised Jerry and Brian that it was denying their claim to the insurance proceeds due to Mr. Bates' alleged material misrepresentations.

Jerry and Brian initiated this action in state court on August 10, 1994, alleging that "insurer's denial or delay of this claim was groundless and brought in bad faith; and therefore, Plaintiff is enitled [sic] under Ins. Code art [sic] 21.21 to recover treble the amount of the amounts involved." Jerry and Brian further allege that they agreed to pay their attorney a reasonable fee and that "[u]nder section 38.001 of the Civil Practice and Remedies Code, Plaintiffs can recover these fees, since the claim is under a written contract." Jackson National removed the case to this court on the basis of diversity of citizenship.

## II. *Analysis*

### A. *Summary Judgment Standard*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402 n. 5, 112 L.Ed.2d 349 (1990); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14; *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. *Breach of Contract*

Jerry and Brian assert that Jackson National breached its contract when it denied their claim for the proceeds of the insurance policy. In its motion for summary judgment, Jackson National contends that Mr. Bates' failure to advise it of his true medical condition constituted a material misrepresentation for which the policy could be voided.

■ Under Texas law, there are five elements an insurance carrier must plead and prove in order to establish a misrepresentation defense:

(1) the making of a representation;

(2) the falsity of the representation;

(3) reliance on the misrepresentation by the insurer;

(4) the intent to deceive on the part of the insured in making the misrepresentation; and

(5) the materiality of the misrepresentation.

*Mayes v. Massachusetts Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex.1980); *accord Lee v. National Life Assurance Co.*, 632 F.2d 524, 527 (5th Cir.1980) (citing *Southern Farm Bureau Life Ins. Co. v. Reed*, 563 S.W.2d 634, 636 (Tex.Civ.App.—Eastland 1978, writ ref'd n.r.e.)); *Garcia v. John Hancock Variable Life Ins. Co.*, 859 S.W.2d 427, 431 (Tex.App.—San Antonio 1993, writ denied); *Flowers v. United Ins. Co. of Am.*, 807 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Tam Nu La v. Aetna Life Ins. Co.*, 781 S.W.2d 630, 634 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd); *Cartusciello v. Allied Life Ins. Co.*, 661 S.W.2d 285, 288 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Estate of Diggs v. Enterprise Life Ins. Co.*, 646 S.W.2d 573, 574 (Tex.App.—Houston [1st Dist.] 1982, writ ref'd n.r.e.).

Jerry and Brian concede in their response to Jackson National's motion for summary judgment that three of the five elements are not in dispute. Jerry and Brian state that the undisputed elements are "a) that the application submitted on behalf of plaintiffs'

father contained representations that; b) misrepresented the state of his health in that it failed to mention his visits to Dr. Pariana, and that the Dr. had told him he suffered from the disease diabetes; and c) that defendant relied on these representations in issuing the policy." Jerry and Brian, however, contest the remaining factors—that Mr. Bates acted intentionally with the purpose of deceiving the defendant and that the misrepresentations were material.

With respect to the fourth and fifth elements—Mr. Bates' intent to deceive and the materiality of the representations—Jackson National argues that Mr. Bates' fraudulent intent is evidenced by the timing of his visits to Dr. Pariana and his false answers to specific questions about his medical history. Jackson National further contends that Mr. Bates' fraudulent intent is shown by his attempt to defraud another insurance company. Specifically, Jackson National points out that Mr. Bates made similar misrepresentations in two different applications for disability insurance with Illinois Mutual Life Insurance and Casualty Company within two months after he was diagnosed with left phlebothrombosis and diabetes. As to the materiality of the representations, Jackson National attached an affidavit by Rita Menthen ("Menthen"), the Vice President of Underwriting for Jackson National, as Exhibit "E" to its motion for summary judgment. According to Menthen, Jackson National relied upon the representations made by Mr. Bates in his application in deciding to issue him a policy. Menthen states that if Jackson National had known of Mr. Bates' true physical condition, it would not have approved his application and issued the policy of life insurance.

In their response to Jackson National's motion for summary judgment, Jerry and Brian assert that their father was a truthful man and was truthful about his diabetes to Galloway. By affidavit, Jerry states, "He was always truthful with me, and I assumed he dealt with others the same way." According to Jerry and Brian, it was Galloway who orchestrated the false answers to the application because she worked on commission and needed the sale. They assert that their father went along with Galloway, but

had no real intent to deceive Jackson National. Jerry and Brian argue that Mr. Bates questioned Galloway about whether it would pay off because it was her idea. In support of this assertion, the plaintiffs attach the affidavit of Bruce Baker ("Baker"), an underwriting agent for American Industries Life Insurance Company. Baker states in his affidavit, "It is not unusual for a sales agent to induce the proposed insured to give incorrect answers to health and health history type questions on the applications. The agent selling on commission has a strong financial incentive to do so when truthful answers might cause the underwriter to do any of the following: require agent to go back to the proposed insured with additional requests, require a higher premium, or reject the policy."

Jerry and Brian further contend that Mr. Bates' misrepresentations were not material and that Jackson National would have issued him a policy even if it had known of the true state of his health, although they acknowledge the policy might have been somewhat different. In his affidavit, Baker states that "[i]n regards [sic] an applicant for insurance who suffered with a mild case of diabetes, most companies would issue a policy covering his life." In Baker's opinion, the "issuance of a policy to such a person would be [sic] normally be expected if the insured met the underwriting guidelines of the company." Baker further states that "[t]he premium on such a policy would vary, depending on the amount of increased risk of mortality, the amount of coverage, the age of the proposed insured, and how quickly the policy would build up cash values." Jerry and Brian claim that Mr. Bates' health problem met Jackson National's underwriting guidelines because his condition was moderate and controlled and would have had little effect on his life expectancy.

█ Texas law requires that the insurer plead and prove that the insured made the misrepresentation "willfully with the intent to deceive or to induce the insurance company to issue the policy." *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1486 (5th Cir.1992) (citing *Lee*, 632 F.2d at 527); *see also Bundick v. National Life & Acci-*

*dent Ins. Co.,* 509 F.Supp. 584, 585 (W.D.Tex. 1980), *aff'd,* 636 F.2d 311 (5th Cir.1981). A material misrepresentation in an insurance application does not defeat recovery if the misrepresentation was made innocently and in good faith. *Adams v. John Hancock Mut. Life Ins. Co.,* 797 F.Supp. 563, 566 (W.D.Tex. 1992), *aff'd,* 49 F.3d 728 (5th Cir.1995); *see Bundick,* 509 F.Supp. at 585–86. Where, as here, "an application for insurance is attached to and made part of the policy and is accepted and retained by the insured, the insured is conclusively presumed to have knowledge of its contents and to have ratified any false statements therein." *Odom v. Insurance Co. of the State of Pa.,* 455 S.W.2d 195, 199 (Tex.1970).

■ Intent to deceive, however, cannot be presumed from the existence of material misrepresentations alone. In *Washington v. Reliable Life Ins. Co.,* the Texas Supreme Court rejected the insurance company's reliance on the rule of *Odom* to establish the defense of misrepresentation as a matter of law. 581 S.W.2d 153, 160 (Tex.1979). The court found that compliance with *Odom* "does not automatically establish the defense of misrepresentations, for there is still outstanding the issue of intentional deception, upon which [the insurance company] had the burden of proof." *Id.* The court acknowledged that *Odom* denied recovery without requiring a finding of intent, but distinguished that aspect of the case, noting that *Odom* concerned violations of warranties rather than representations and that there was strong evidence of collusion. *Id.*

The Fifth Circuit, when reviewing Texas precedent in *Lee,* noted, "*Washington* appears to establish the rule that intent to deceive or induce issuance of an insurance policy can never be proved as a matter of law to establish the misrepresentation defense in the absence of either a warranty that the facts contained in the application are true or evidence of collusion between the applicant and the insurance agent." 632 F.2d at 528. On rehearing in *Lee,* the Fifth Circuit modified its prior opinion on the basis of the Texas Supreme Court's decision in *Mayes,* stating that "the clear implication of the *Mayes* decision is that intent to deceive or

induce issuance of the policy can, under Texas law, be established as a matter of law regardless of whether there is any evidence of collusion or a warranty by the insured." 635 F.2d 516, 517 (5th Cir.1981). In *Mayes,* there was no question of collusion between the agent and the applicant, and the applicant's statements were found to be representations rather than warranties. 608 S.W.2d at 616. The Texas Supreme Court disagreed with the insurer's position that the insured's failure to disclose that certain answers in the health history portion of the application had become untrue established intent to deceive as a matter of law. *Id.* The *Mayes* court held, however, that after considering the facts, intent was not established as a matter of law. *Id.* The Fifth Circuit, likewise, in its opinion on rehearing in *Lee,* concluded that the insurer had failed to establish the insured's intent to deceive or induce issuance of the policy as a matter of law, citing the reasons set forth in its previous opinion. 635 F.2d at 517 (citing *Lee,* 632 F.2d at 528–29).

In any event, as the court noted in *Adams,* "[u]nder the current law of Texas, any misrepresentations in the application for an insurance policy cannot alone establish an intent to deceive by the insured as a matter of law." 797 F.Supp. at 568–69. In *Garcia,* a case strikingly similar to the case at bar, the plaintiff's deceased husband was asked a series of questions regarding his health history in two applications for insurance. 859 S.W.2d at 430. Garcia represented that he had never been treated for or had any known indication of diabetes. *Id.* He also represented that he had not consulted a physician or been examined or treated at a hospital or other medical facility within the last five years; was not being treated by a physician or taking any prescription drug; and did not have a personal physician. *Id.* The insurance company argued that Garcia misrepresented his health on two applications and that his intent to deceive was evidenced by the fact that both sets of representations were made within two weeks of each other, with the first being made less than a week after the date he began taking a prescription drug to treat diabetes. *Id.* at 432. The court found, however, that the insurance company's establishing that the insured knew

about his health problems and made false statements concerning them did not prove as a matter of law that he intended to deceive the insurer. *Id.* at 433 (citing *Flowers,* 807 S.W.2d at 786). In *Flowers,* the court, likewise, held that an insured's mere knowledge of his or her health condition is insufficient to prove intent to deceive as a matter of law. 807 S.W.2d at 786. The court found that the insurer's showing that the insured knew about his heart condition and made false statements concerning his health did not prove the insured's intent to deceive. *Id.* Similarly, in *Estate of Diggs,* the First Court of Appeals held that the fact that the insured misrepresented his health condition was insufficient to establish intent to deceive as a matter of law. 646 S.W.2d at 575–76. The court found that, absent a warranty or collusion, an intent to deceive could not be presumed when the insured, who had a long history of heart ailments, made false statements in his application. *Id.* at 576. In a later decision, the same appellate court stated that "intent to deceive or induce the issuance of an insurance policy can never be proved as a matter of law to establish the defense of misrepresentation. Intentional deception must be pled and proved as a matter of fact." *Cartusciello,* 661 S.W.2d at 288.

■ Consequently in this case, there is a genuine issue of material fact under Texas law concerning Mr. Bates' intent to deceive and induce the issuance of the policy. While a jury may find intent to deceive by a preponderance of the evidence at trial, Jackson National has failed to establish intent to deceive as a matter of law. Therefore, summary judgment on the plaintiffs' contract claim is not warranted.

### C. *Breach of the Duty of Good Faith and Fair Dealing*

Jerry and Brian also contend that Jackson National breached its duty of good faith and fair dealing when it rejected their claim for the insurance proceeds.

■ The Texas Supreme Court has recognized a duty on the part of insurers to deal fairly and in good faith with their insureds. *See Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340 (Tex.1995); *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990) (citing *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987)). The "duty emanates not from the terms of the insurance contract, but from an obligation imposed in law 'as a result of a special relationship between the parties governed or created by a contract.'" *Id.* This duty of good faith and fair dealing is imposed on the insurer because of the disparity of bargaining power and the exclusive control that the insurer exercises over the evaluation, processing, and denial of claims. *Caserotti v. State Farm Ins. Co.,* 791 S.W.2d 561, 565 (Tex. App.—Dallas 1990, writ denied) (citing *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988)). An insurer "is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business." *Id.* at 565–66 (citing *Arnold,* 725 S.W.2d at 167). A breach of this duty is compensable in tort damages. *Id.* at 566.

■ "In order to prove a bad faith case against an insurer, an insured must show either that the insurer 'had no reasonable basis' for denying the claim or that the insurer failed to determine whether there was a reasonable basis for denying the claim." *Standard Fire Ins. Co. v. Rominger,* 827 F.Supp. 1277, 1279 (S.D.Tex.1993); *Arnold,* 725 S.W.2d at 167; *State Farm Lloyds, Inc. v. Polasek,* 847 S.W.2d 279, 283 (Tex.App.—San Antonio 1992, writ denied). To establish a cause of action for breach of the duty of good faith and fair dealing or "bad faith" against the insurer, the insured must prove:

(1) the absence of a reasonable basis for denying or delaying payment of the benefits of the policy and

(2) that the carrier knew or should have known that there was not a reasonable basis for denying the claim or delaying payment of the claim.

*Stoker,* 903 S.W.2d at 340 (citing *Aranda,* 748 S.W.2d at 213); *accord Robinson v. State Farm Fire & Casualty Co.,* 13 F.3d 160, 162 (5th Cir.1994); *Thrash v. State Farm Fire & Casualty Co.,* 992 F.2d 1354, 1358 and n. 21 (5th Cir.1993); *Rominger,* 827 F.Supp. at

1279; *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 18 (Tex.1994); *National Union Fire Ins. Co. v. Dominguez,* 873 S.W.2d 373, 376 (Tex.1994); *Lyons v. Millers Casualty Ins. Co.,* 866 S.W.2d 597, 600 (Tex.1993); *Viles,* 788 S.W.2d at 567; *Connolly v. Service Lloyds Ins. Co.,* 910 S.W.2d 557, 560 (Tex. App.—Beaumont 1995, n.w.h.); *Aetna Casualty & Sur. Co. v. Garza,* 906 S.W.2d 543, 546 (Tex.App.—San Antonio 1995, writ dism'd by agr.); *Liberty Mut. Fire Ins. Co. v. Crane,* 898 S.W.2d 944, 949 (Tex.App.—Beaumont 1995, n.w.h.); *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 800 (Tex.App.—Amarillo 1995, writ denied).

The first element requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant benefits. *Stoker,* 903 S.W.2d at 340; *Crane,* 898 S.W.2d at 949. As the Texas Supreme Court noted, "this assures that a carrier 'will not be subject to liability for an erroneous denial of a claim,' as long as a reasonable basis for denial of the claim exists." *Stoker,* 903 S.W.2d at 340 (citing *Lyons,* 866 S.W.2d at 600). The second element will be met "by establishing that the carrier actually knew there was no reasonable basis to deny the claim ..., or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay." *Rominger,* 827 F.Supp. at 1278; *Aranda,* 748 S.W.2d at 213. The second element is an attempt to balance the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. *Dominguez,* 873 S.W.2d at 376. The *Aranda* court observed, "Carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim." 748 S.W.2d at 213; *see also Thrash,* 992 F.2d at 1356 (citing *Beaumont Rice Mill, Inc. v. Mid–American Indem. Ins. Co.,* 948 F.2d 950, 952 (5th Cir.1991)).

■ Coverage is not the issue in a bad faith claim; rather, the focus is on the reasonableness of the insurer's conduct in rejecting the claim. *See id.; Lyons,* 866 S.W.2d at 600. "[I]t is not enough for the insured to show that the insurer should have known to pay the claim, or that there were other facts suggesting that the claim was valid. The insured must show that no reasonable basis existed for denying the claim." *Polasek,* 847 S.W.2d at 284 (citing *Aranda,* 748 S.W.2d at 213; *Arnold,* 725 S.W.2d at 167). If the insured cannot prove the absence of a reasonable basis, the insurer is entitled to judgment on the bad faith claims as a matter of law. *Beaumont Rice Mill, Inc.,* 948 F.2d at 952; *Rominger,* 827 F.Supp. at 1279–80; *Emmert v. Progressive County Mut. Ins. Co.,* 882 S.W.2d 32, 35–36 (Tex. App.—Tyler 1994, writ denied); *Love of God Holiness Temple Church v. Union Standard Ins. Co.,* 860 S.W.2d 179, 182 (Tex.App.— Texarkana 1993, writ denied); *Charter Roofing Co. v. Tri–State Ins. Co.,* 841 S.W.2d 903, 906 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

In this case, Jackson National contends that because Jerry and Brian are third-party beneficiaries, as opposed to insureds, there is no "special relationship" which gives rise to the duty of good faith and fair dealing. Thus, according to Jackson National, it does not owe a duty of good faith and fair dealing to them. In their response to the defendant's motion for summary judgment, Jerry and Brian assert that the plaintiffs "were the family of the insured, they were the beneficiaries designated by him to receive the proceeds upon his death, the persons he listed in the policy and wanted taken care of, and the ones the insurance company promised to pay upon his deaths [sic]." They further maintain that one of the reasons their father purchased the insurance was to take care of his family. Thus, Jerry and Brian claim that "[t]his should be enough to take them within the ambit of specially protected persons like the claimant in a workers [sic] compensation case who has standing to sue."

In *Watson v. Allstate Ins. Co.,* the plaintiff, an automobile accident victim, brought suit directly against the other driver's insurer as an alleged third-party beneficiary of the policy. 828 S.W.2d 423, 425–26 (Tex.App.—Fort Worth 1991, writ granted), *aff'd in part and rev'd in part,* 876 S.W.2d 145 (Tex.1994). Watson compared her situation to that of the injured worker covered by workers' compen-

sation in *Aranda. Id.* at 426. The Court of Appeals affirmed summary judgment for the insurer on Watson's claim for breach of the duty of good faith and fair dealing. *Id.* The Court of Appeals, in its discussion of *Aranda,* noted that the Texas Supreme Court held that, under the Workers' Compensation Act, the employee is a party to the insurance contract and the contract between the employee and the insurer creates the same type of special relationship that arises under other insurance contracts. *Id.* (citing *Aranda,* 748 S.W.2d at 212). The court in *Aranda,* therefore, found that there is a duty on the part of workers' compensation carriers to deal fairly and in good faith with injured employees in the processing of compensation claims. *Id.* (citing *Aranda,* 748 S.W.2d at 212–13). The appellate court in *Watson* distinguished *Aranda:*

> Unlike the employee in *Aranda,* Watson, although she may be an intended beneficiary under the policy, is not part of a direct contractual relationship with the insured or the insurer as was the worker in *Aranda.* She therefore did not have a special relationship with Allstate as would an insured or other party contractually related to the insurer or the insured. Since the duty of good faith and fair dealing arises out of such a special trust relationship, it follows that such a duty is lacking in this case.

*Id.* Watson did not seek a writ of error with respect to the Court of Appeals' affirmance of summary judgment against her on this ground.

As Jackson National points out, it appears that the Texas Supreme Court tacitly embraced the holding of the Court of Appeals by stating:

> The court of appeals below held that Allstate did not owe Watson, a third party claimant, a common law duty of good faith and fair dealing under *Arnold* and *Aranda* and Watson has not appealed that determination. Moreover, because Watson is not an insured, we decline to construe art. 21.21, section 16 and Board Order 18663 so as to permit a cause of action which would be contrary to the common law duties rec-

ognized in favor of insureds under *Arnold* and the related duties under *Aranda.*

*Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 150 n. 8 (Tex.1994). Jackson National asserts in its reply that even before the Texas Supreme Court's decision in *Watson,* Texas courts addressing the issue had held that insurers do not owe a duty of good faith and fair dealing to third-party claimants. *See, e.g., P.G. Bell Co. v. United States Fidelity & Guar. Co.,* 853 S.W.2d 187, 190 (Tex.App.—Corpus Christi 1993, no writ); *Caserotti,* 791 S.W.2d at 566; *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728, 732 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

Here, Jerry and Brian make the identical claim as the plaintiff in *Watson*—their case is comparable to that of the injured worker covered by workers' compensation as discussed in *Aranda.* The defendants correctly point out in their reply that unlike employees covered by workers' compensation, Jerry and Brian are not parties to the insurance contract between Jackson National and Mr. Bates. They did not provide any consideration for the benefits payable upon Mr. Bates' death. Moreover, unlike employees who give up their common law remedies in exchange for workers' compensation benefits, Jerry and Brian gave up nothing to obtain their status as beneficiaries of Mr. Bates' life insurance policy. Under these circumstances, Texas precedent suggests that Jackson National did not owe a duty of good faith and fair dealing to Jerry and Brian, as they are merely third parties claiming under the policy, like the plaintiff in *Watson.* Only the insured or a party to an insurance contract appears to have standing in Texas to sue an insurance carrier for breach of the duty of good faith and fair dealing.

If, however, Jackson National were found to owe such a duty to the plaintiffs, Jerry and Brian have adduced no evidence that the company breached that duty. Under Texas law, if a reasonable basis exists for questioning the claim, an insurer may deny it and litigate the matter without also facing a bad faith claim, even if that denial later proves to be in error. *See Aranda,* 748 S.W.2d at 212; *Fuentes v. Texas Employers' Ins. Ass'n,* 757 S.W.2d 31, 33–34 (Tex.App.—San Antonio

1988, no writ). The denial may be erroneous and still be in good faith if it was fairly based upon the information available to the insurer at the time of denial. *See St. Paul Guardian Ins. Co. v. Luker,* 801 S.W.2d 614, 621 (Tex. App.—Texarkana 1990, no writ). When there is a bona fide controversy, the insurer has a right to have its day in court on the underlying claim without subjecting itself to potential liability for bad faith practices. *Id; see also St. Paul Lloyd's Ins. Co. v. Fong Chun Huang,* 808 S.W.2d 524, 526 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *National Union Fire Ins. Co. v. Hudson Energy Co.,* 780 S.W.2d 417, 426 (Tex. App.—Texarkana 1989), *aff'd,* 811 S.W.2d 552 (Tex.1991).

■ In *Thrash,* the Fifth Circuit recognized that the burden of showing that a denial of coverage amounts to a breach of the insurer's duty of good faith and fair dealing lies squarely on the insured. 992 F.2d at 1358. Hence, to prevail, Jerry and Brian must establish the complete absence of a reasonable basis for the denial of their claim. *See Lockett v. Prudential Ins. Co. of Am.,* 870 F.Supp. 735, 740 (W.D.Tex.1994). "If the undisputed facts demonstrate the insurer possessed evidence reasonably showing the insured's contract claim might not be valid, the bad faith action is not viable as a matter of law because the opposite of the vital fact has been conclusively proven." *Id.* at 740–41. Here, it is undisputed that Mr. Bates made misrepresentations concerning his health on his application for insurance. In view of these admitted misrepresentations, it cannot be said that Jackson National had no reasonable basis for questioning the claim and denying payment to Jerry and Brian. Thus, Jerry and Brian have failed to raise a fact issue on their bad faith claim. *See generally Rominger,* 827 F.Supp. at 1279–80.

Therefore, Jackson National is entitled to summary judgment on the plaintiffs' bad faith claim because, under Texas law, the duty of good faith and fair dealing does not appear to extend to Jerry and Brian as third-party beneficiaries. In any event, in light of Mr. Bates' misrepresentations about his health, Jerry and Brian cannot show that Jackson National lacked a reasonable basis for denying their claim.

### D. *Violation of Article 21.21 of the Texas Insurance Code*

Finally, Jerry and Brian maintain that Jackson National's refusal to pay the $100,-000.00 in insurance proceeds violates art. 21.21 of the Texas Insurance Code. It is unclear from the pleadings and the summary judgment submissions the specific provisions of the Insurance Code upon which Jerry and Brian rely. The plaintiffs merely allege in ¶ VI of their original petition:

All conditions precedent to recovery under this policy have occurred or have been complied with. Defendant insurer's denial or delay of this claim was groundless and brought in bad faith; and therefore, Plaintiff is entitled under Ins. Code art [sic] 21.21 to recover treble the amount of the amounts involved.

■ The court assumes that Jerry and Brian are referring to the unfair practices provisions found in art. 21.21 § 16 of the Texas Insurance Code, which states in part:

Any person who has sustained actual damages as a result of another's engaging in an act or practice declared in Section 4 of this Article to be unfair methods of competition or unfair or deceptive acts or practices in the business of insurance or in any practice specifically enumerated in a subdivision of Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice may maintain an action against the person or persons engaging in such acts or practices.

Tex.Ins.Code Ann. art. 21.21 § 16(a); *see also Ayoub v. Baggett,* 820 F.Supp. 298, 299 (S.D.Tex.1993). The purpose of the unfair practices provisions of the Insurance Code is to "regulate trade practices in the business of insurance." *Id.* (citing Tex.Ins.Code Ann. art. 21.21(1)(a) (Supp.1993)). Violation of a duty of good faith and fair dealing also constitutes an unfair insurance practice in violation of art. 21.21 § 16 of the Texas Insurance Code. *Dixon v. State Farm Fire & Casualty Co.,* 799 F.Supp. 691, 694 (S.D.Tex.1992).

The Fifth Circuit, interpreting the laws of Texas, has narrowly construed the term "any person" in § 16(a). *See Palma v. Verex Assurance, Inc.,* 79 F.3d 1453, 1456 (5th Cir. 1996). In *Palma,* the court noted that, under current Texas law, "'absent privity of contract or some sort of reliance by the person bringing the claim on the words or deeds of the insurer, a suit will not lie under art. 21.21.'" *Id.* (citing *Warfield v. Fidelity & Deposit Co.,* 904 F.2d 322, 327 (5th Cir. 1990)). In *Warfield,* the court analyzed two decisions from Texas appellate courts addressing the issue of standing under art. 21.21. *Id.* (citing *Chaffin,* 731 S.W.2d at 731; *Hermann Hosp. v. National Standard Ins. Co.,* 776 S.W.2d 249, 252 (Tex.App.—Houston [1st Dist.] 1989, writ denied)). The Fifth Circuit observed in *Palma* that "[d]espite expressly recognizing that *Chaffin* extended standing to beneficiaries of insurance policies, *Warfield* limited standing to those with privity of contract or those who had relied on the words or deeds of the insurer." *Id.* Subsequently, the *Warfield* analysis was recognized as the test for determining standing under art. 21.21. *Id.* (citing *In re Burzynski,* 989 F.2d 733, 741 (5th Cir.1993)).

■ Relying on the recent Texas Supreme Court opinion in *Watson,* Jackson National contends that Jerry and Brian lack standing to assert violations of the Texas Insurance Code, including art. 21.21. In *Watson,* the Texas Supreme Court addressed standing under art. 21.21 in the context of a claim asserted under an automobile liability policy by a third-party claimant in a direct action against the other driver's insurer. *See* 876 S.W.2d at 149–50. The court observed that the "obligations imposed by art. 21.21 of the Insurance Code … are engrafted onto the contract between the insurer and insured and are extra-contractual in nature." *Id.* at 149. The court found that the following factors weighed against granting standing to the third-party claimant:

> A third-party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand

the benefit of the extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds.

*Id.* The Texas Supreme Court then noted that although it had previously extended standing to third-party beneficiaries of automobile insurance policies, it refused to extend standing to third-party claimants on those policies under art. 21.21. *Id.* at 150 (citing *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770 (Tex.1983)). The court concluded that there is nothing to suggest that the extra-contractual obligations, rights, and remedies of article 21.21 § 16 should extend to third-party claimants. *Id.* The court commented that if it were to extend to third-party claimants the same duties insurers owe to their insureds, insurers would be faced with owing coextensive and conflicting duties. *Id.* Consequently, the court stated that it would "not construe art. 21.21 … absent explicit directive from the legislature, so as to compromise the insurer's loyalties and obligations owed to the insured." *Id.* The court, therefore, held that Watson, as a third-party claimant, lacked standing under § 16 of art. 21.21 to sue Allstate directly for unfair claim settlement practices. *Id.*

The Fifth Circuit, however, in *Palma,* determined that the plaintiff, a mortgagor-borrower, was a third-party beneficiary of the mortgage insurance contract between the mortgagee and the insurer and, thus, had standing to bring an action for unfair or deceptive acts or practices against the insurer under art. 21.21. *See* 79 F.3d at 1457–58. The court distinguished *Watson,* stating:

> Due to the unique nature of the mortgage insurance policy in the instant case, Palma, unlike the third-party claimant in *Watson,* satisfies most of the factors discussed by the Texas Supreme Court that weighed against standing in that case. Palma had a contract with the insured, City Federal, in the form of a mortgage. Palma paid the premiums for the mortgage insurance. Additionally, Palma is designated by name in the certificate of insurance issued by Verex to City Federal.

*Id.* at 1456–57. The court found that the considerations that weighed against standing

in *Watson* weighed in favor of granting Palma standing. *Id.* at 1457. Because the Texas Supreme Court did not expressly state that these factors were to be used when deciding whether a party was entitled to standing under art. 21.21, the Fifth Circuit concluded after an *Erie* analysis:

> if the Texas Supreme court were presented with the question before us it would hold that standing under art. 21.21 is satisfied by not only those who can establish privity of contract or reliance on a representation of the insurer, but also by those who can establish that they were an intended third-party beneficiary of the insurance contract.

*Id.*

In a recent decision, a Texas appellate court held that the named beneficiary of a life insurance policy had standing to assert violations of the Texas Insurance Code. *Mendoza v. American Nat'l Ins. Co.*, No. 04–95–00564, 1996 WL 254374, at *2, —— S.W.2d ——, —— (Tex.App.—San Antonio, May 15, 1996, n.w.h.). The court in *Mendoza* recognized:

> Unlike the more restrictive standing requirement under the DTPA, section 16 of article 21.21 of the Insurance Code provides a cause of action to any person who has been injured by another's engaging in unfair or deceptive acts or practices in the business of insurance as declared in: (1) section 4 of article 21.21; (2) the rules or regulations issued under article 21.21; or (3) section 17.46 of the DTPA. Therefore, a plaintiff may bring an action under article 21.21 of the Insurance Code for a violation of 17.46 of the DTPA without being required to prove consumer status.

*Id.* (citations omitted). The court stated that "[a]s the named beneficiary of the policy, Carrion would clearly be injured as a result of [the insurance agent's] misrepresentation. Therefore, Carrion has standing as an injured person to assert a cause of action under section 16 of article 21.21." *Id.* The court concluded that Carrion could include claims alleging unfair or deceptive acts or practices as defined in § 4 of art. 21.21 as well as claims alleging the deceptive acts enumerated in the subsections of § 17.46(b)

of the DTPA that do not incorporate a consumer standing requirement. *Id.*

■ In the case at bar, the plaintiffs make their claim as third-party beneficiaries, not as insureds. Jerry and Brian, however, do not fall squarely under *Watson* or *Palma*, as they are not simply third-party claimants nor are they mortgagor-borrowers. Instead, the *Mendoza* case appears to be controlling. This court must follow decisions of the Texas Court of Appeals, such as *Mendoza*, unless it is convinced by other persuasive data that the Texas Supreme Court would decide otherwise. *See Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Palma*, 79 F.3d at 1457 n. 4; *Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Exxon Co. v. Banque De Paris Et Des Pays–Bas*, 889 F.2d 674, 676 (5th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990); *Taylor v. Jim Walter Corp.*, 731 F.2d 266, 267 (5th Cir.1984). Here, the parties have presented no persuasive data that the Texas Supreme Court would hold otherwise. Hence, Jerry and Brian have standing to assert violations of art. 21.21 of the Texas Insurance Code.

■ The Texas Insurance Code, however, is essentially a statutory codification of the already existing common law requirements. *Robinson*, 13 F.3d at 162; *Rominger*, 827 F.Supp. at 1279. The breach of an insurance contract does not automatically give rise to liability under the Insurance Code. *South Tex. Nat'l Bank v. United States Fire Ins. Co.*, 640 F.Supp. 278, 280 (S.D.Tex.1985); *Walker v. Federal Kemper Life Assurance Co.*, 828 S.W.2d 442, 454 (Tex.App.—San Antonio 1992, writ denied). Rather, the "reasonableness" requirements of common law good faith apply equally in the statutory context. Hence, in order to establish a statutory violation under the Insurance Code, the same elements necessary to establish an insurer's breach of the common law duty of good faith and fair dealing must be proven. *Lockett*, 870 F.Supp. at 741 (citing *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988); *Koral Indus.*,

*Inc. v. Security–Connecticut Life Ins. Co.,* 788 S.W.2d 136, 147 (Tex.App.—Dallas), *writ denied per curiam,* 802 S.W.2d 650 (Tex. 1990)). "A statutory violation is dependent upon a 'determination pursuant to law that the insurer breached the duty of good faith and fair dealing. Obviously, unless the breach of the duty of good faith and fair dealing is first established, the essential determination pursuant to law is absent.'" *Id.* (citing *Koral Indus., Inc.,* 788 S.W.2d at 148). "As long as there exists a reasonable basis for the insurer to deny the insured's claim, the insurer does not violate any provision of Article 21.21–2." *Love of God Holiness Temple Church,* 860 S.W.2d at 182.

As discussed above, Jerry and Brian have not shown that Jackson National lacked a reasonable basis for denying their claim in view of Mr. Bates' misrepresentation of his health condition. Because Jackson National had a reasonable basis for denying the plaintiffs' claim to the insurance proceeds and, thus, did not breach the common law duty of good faith and fair dealing, Jerry and Brian's claim for violation of the Insurance Code, likewise, must be rejected.

Accordingly, Jackson National is entitled to summary judgment on Jerry and Brian's statutory claim of bad faith under art. 21.21 of the Texas Insurance Code.

### III. *Conclusion*

Jackson National's motion for summary judgment is GRANTED on Jerry and Brian's claims of breach of the duty of good faith and fair dealing and violation of art. 21.21 of the Texas Insurance Code. There exist no outstanding issues of material fact with regard to these claims, and Jackson National is entitled to judgment as a matter of law.

As to Jerry and Brian's breach of contract claim, however, Jackson National's motion for summary judgment is DENIED.

IT IS SO ORDERED.