**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 92-4054

BOBBY THRASH, SR.,

Plaintiff-Appellee,

versus

STATE FARM FIRE & CASUALTY COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
May 28, 1993

( May 28, 1993 )

Before POLITZ, Chief Judge, WISDOM and WIENER, Circuit Judges.

POLITZ, Chief Judge:

Challenging the sufficiency of the evidence to support a verdict for extracontractual damages, State Farm Fire & Casualty Company partially appeals the judgment on verdict in favor of Bobby Thrash, Sr., as modified by the trial court. On the issues appealed we reverse and render judgment in favor of State Farm.

Background

This dispute arises from a claim Thrash presented to his insurer, State Farm, shortly after fire destroyed his home near Reklaw, Cherokee County, Texas. State Farm conducted an investigation into the circumstances surrounding the destruction of the Thrash home immediately after the claim was filed.

State Farm's investigator and the local state fire marshal agreed, after inspecting the scene and interviewing witnesses, including Thrash, that someone intentionally set the fire by "pouring flammable liquids in several rooms of the house" and that Thrash most likely was that person. The evidence indicated that Thrash: (1) purchased the policy from State farm five weeks before the fire and after his efforts to sell the house proved futile; (2) moved out of the house and into a mobile home, carrying his valuables with him, two weeks before the fire; (3) returned to the house hours before the fire, locking it behind him, and is the last person known to be on the premises before the fire; (4) faced threats from the Internal Revenue Service to foreclose on his house if he did not either pay off its $9,000 levy or sell the house within 120 days (he also owed $7,000 in local taxes); (5) was unemployed and had received no income for months, and could no longer rely on his ex-wife, and sole source of income, to meet his obligations.[1]

_____

[1] There was more, including: (1) Thrash was in arrears in mortgage payment but the balance was only $3,500 leaving a very sizeable equity; (2) he had recently lost about $200,000 in bankruptcy; (3) his current marriage was in crisis due to financial strain; (4) he was facing retirement without any source of income; and (5) on the night of the fire the entire family was away from the house at a party planned several weeks in advance.

Relying on the conclusions of its independent expert, the state fire marshal, and the evidence produced in their reports, State Farm denied the claim and instituted a declaratory judgment action in federal court to determine its liability. Thrash counterclaimed for payment under the policy, as well as compensation for mental anguish and exemplary damages, under the Texas common law, Texas Insurance Code, and Texas Deceptive Trade Practices -- Consumer Protection Act. The case proceeded to trial before a jury.

At the close of the evidence, State Farm moved for a directed verdict, contending that, as a matter of law, Thrash was not entitled to damages beyond recovery under the policy. The court granted the motion, finding insufficient evidence to support Thrash's claims of either gross negligence or that State Farm had committed a knowing[2] violation of the DTPA, either of which would have allowed the discretionary imposition of exemplary damages.[3]

The jury returned a verdict awarding Thrash approximately $158,000 under the policy, $110,000 for breach of the duty of good

_____

[2] The DTPA defines "knowingly" as an "actual awareness of the falsity, deception, or unfairness of the practice." Tex. Bus. & Com. Code Ann. § 17.45.

[3] Tex. Bus. & Com Code § 17.50(b)(1) (Supp. 1993); Tex. Civ. Prac. & Rem. Code § 41.003(a)(3) (Supp. 1993). In his brief, Thrash claims that the court erred in not allowing him to recover exemplary damages and forcing him to elect among damage awards under the common law and the DTPA. Thrash has not filed a notice of appeal; we do not consider these points. F.R.A.P. 4(a)(3). See also **Cyark v. Lemon**, 919 F.2d 320 (5th Cir. 1990).

3

faith and fair dealing, $200,000 for deceptive practices, $2,000 in mandatory treble damages under the DTPA, and $38,000 in attorney's fees and prejudgment interest. State Farm again sought to limit the recovery to contractual damages in a motion for judgment notwithstanding the verdict.[4] The court denied the motion but required Thrash to elect between the $110,000 and $200,000 awards as they represented compensation for the same mental anguish damages; State Farm timely appealed challenging only the award of extracontractual damages.

## Analysis

At the outset we stress the limited nature of the appeal: the sufficiency of evidence to support the award of extracontractual damages. We are not here presented with a challenge to the jury's determination that Thrash did not burn down his house. Rather, we are to consider only whether there is sufficient evidence to support the award of damages under the Texas common law, as it is bound up in the Texas Insurance Code and the DTPA.

In a diversity case state law provides the elements of the plaintiff's case.[5] Federal law, however, provides the scale by which we measure the sufficiency of the evidence to support the

---

[4] The 1991 revisions to the Rules of Civil Procedure abolished the distinction between directed verdict and judgment notwithstanding the verdict. Both are now simply labeled judgment as a matter of law. Fed.R.Civ.P. 50.

[5] **Ayres v. Sears, Roebuck & Co.**, 789 F.2d 1173 (5th Cir. 1986).

jury's findings.[6]  Here we consider the law of Texas, specifically the common-law duty of good faith and fair dealing imposed on an insurer, and the related duties under the DTPA and Insurance Code.

Our standard of review is narrow.  We review the district court's decision to deny a motion for judgment as a matter of law, as did the district court,[7] according deference to the verdict. Nonetheless, we recognize that a jury occasionally may become confused; or, on rare occasions, may breach its obligation to apply the law fairly to the proven facts.  In either case the verdict must be rejected as a matter of law.

We will reject a verdict in those instances when, despite "considering all the evidence in the light and with all reasonable inferences" most favorable to the verdict, we find no evidence of "such quality and weight that reasonable and fair-minded men in the exercise of impartial discretion" could arrive at the same conclusion.[8]  In such a case the district court is obliged to set aside the verdict.  Such instances are rare, but the case before us is one of those instances.

---

[6] See **Gross v. Black & Decker, Inc.**, 695 F.2d 858 (5th Cir. 1983).

[7] For a scholarly discussion of sufficiency review see Steven A. Childress & Martha S. Davis, Federal Standards of Review § 3.01 (2d ed. 1992).

[8] **Mozingo v. Correct Mfg. Corp.**, 752 F.2d 168, 176 (5th Cir. 1984).

In **Arnold v. National County Mutual Fire Ins. Co.**,[9] the Texas Supreme Court recognized a duty of good faith and fair dealing in the context of insurance settlement practices. The parameters of this duty are somewhat indistinct. The court made clear in **Aranda v. Insurance Co. of North America**,[10] however, that this duty is breached by the insurer's failure to pay promptly an insured's claim when liability becomes reasonably clear.[11] Obviously, not every refusal to pay is wrongful. "A carrier maintains the right to deny an invalid or questionable claim without becoming subject to liability for bad faith denial of the claim."[12] The breach of this duty also constitutes a violation of the DTPA and Insurance Code. Thrash relied on all three.

The DTPA provides a private remedy for, *inter alia*, conduct proscribed in any of the 24 specified violations of the "laundry list" (§ 17.46(b)), none of which address settlement practices, and also for "the use or employment by any person of an act or practice in violation of Article 21.21, Texas Insurance Code, . . . ."[13] While

---

[9]    725 S.W.2d 165, 167 (Tex. 1987).

[10]    748 S.W.2d 210, 212-13 (Tex. 1988).

[11]    **Koral Indus., Inc. v. Security-Connecticut Life Ins. Co.**, 788 S.W.2d 136, 147 (Tex.App. -- Dallas), writ denied per curiam, 802 S.W.2d 650 (1990).

[12]    **Beaumont Rice Mill, Inc. v. Mid-American Indem. Ins. Co.**, 948 F.2d 950, 952 (5th Cir. 1991) (citing **Aranda**).

[13]    Tex. Bus. & Com. Code Ann. § 17.50(a)(1) & (4).

section 17.46 also declares unlawful any false, deceptive, or misleading acts, section 17.46(d) disallows a private cause of action for conduct outside the 24 violations specified in the statutory litany. Thus, independent of the Insurance Code or perhaps section 17.50(a)(3) ("unconscionable action or course of action"), the DTPA does not provide a private remedy for bad faith settlement practices.

The Insurance Code specifically addresses unfair claim settlement practices in article 21.21-2. Among those practices is "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become clear."[14] That section has limited remedial effect, however; it only provides for the administrative issuance of cease and desist orders. Section 16 of the Insurance Code, on the other hand, provides a private cause of action for deceptive acts or practices specified in rules and regulations adopted by the State Board of Insurance, or for any practice defined as unlawful by section 17.46 of the DTPA.

A State Board of Insurance order declares unlawful "any unfair or deceptive act or practice as defined by the Insurance Code."[15] The order also makes "any trade practice which is determined pursuant to law to be an unfair . . . or deceptive act" unlawful "irrespective of the fact that the improper trade practice is not

---

[14] Tex. Rev. Civ. Stat. art. 21.21-2(2)(d) (Supp. 1993).

[15] 28 Tex. Admin. Code § 21.3 (1992).

7

defined" elsewhere.

In **Vail v. Texas Farm Bureau Mutual Ins. Co.**,[16] the Texas Supreme Court determined that the Board's order incorporated the definitions in article 21.21-2 of the Insurance Code and thus conduct defined therein became actionable in a suit for damages even though the article limited its remedy to the issuance of cease and desist orders. The **Vail** court also found the breach of the common-law duty recognized in **Arnold** to be a practice "determined pursuant to law" to be "unfair or deceptive." Finally, **Vail** recognized a cause of action under the Insurance Code for violation of an unlisted "false, misleading, or deceptive" action even though the DTPA itself would not provide a private cause of action for an unlisted violation. The Texas Supreme Court reasoned that section 16 of the Insurance Code incorporates listed and unlisted practices alike because section 16 makes any practice "defined by Section 17.46 [of the DTPA] . . . as an unlawful deceptive trade practice" to be a violation of the Insurance Code.[17]

Thrash asserts a claim flowing from the common law, which was incorporated into the Insurance Code by the Insurance Board's order

---

[16]     754 S.W.2d 129 (Tex. 1988).

[17]     At least one Texas court has questioned this aspect of the **Vail** decision. **W.H. McGee & Co., Inc. v. Schick**, 792 S.W.2d 513 (Tex.App. -- Eastland 1990), vacated pursuant to settlement, 843 S.W.2d 473 (Tex. 1992). The court noted first that **Vail**'s discussion of the issue was merely *obiter dictum* and that the Insurance Code only adopts as unlawful, practices "defined" in section 17.46 of the DTPA. According to the court, an unlisted violation is *a priori* undefined and thus this aspect of the **Vail** decision is dicta. We need not address the issue.

and the DTPA by virtue of the DTPA's incorporation of the Insurance Code. The claim also constitutes an allegation of an independent, though unlisted, violation of the DTPA laundry list which, although the DTPA expressly forecloses a remedy, is actionable under section 16 of the Insurance Code by its incorporation of the DTPA.[18] Finally, the claim is independently asserted to be a violation of the Insurance Code to the extent it is directed to conduct defined in article 21.21-2, even though that section does not allow private enforcement.

Obviously, one walks in legally treacherous territory when one attempts to define the precise boundaries of the duties created by the common law, the unlisted deceptive trade practices,[19] and the Insurance Code. The parties have opted to treat these duties as coextensive, focusing only on the remedial aspects of the DTPA. For purposes of this appeal, and without deciding same, we will

---

[18] Under the advanced **Vail** logic, the violation would become actionable under the DTPA under section 17.50(a)(4) even though it would not directly be actionable under section 17.50(a)(1) because it constitutes a violation of the Insurance Code rather than a violation specified in the laundry list. The logic of this evades us. See **Beaumont Rice Mill**.

[19] The Texas Supreme Court frequently has explained that the "DTPA does not represent a codification of the common law." **Alvarado v. Bolton**, 749 S.W.2d 47, 48 (Tex. 1988) (quoting **Smith v. Baldwin**, 611 S.W.2d 611, 617 (Tex. 1980)). The common practice of collectively referring to these claims as "bad faith" claims is understandable in light of their complexity and common origin. We are wary, however, of the implicit assumption that the list of defined practices in Insurance Code article 21.21-2, the DTPA, and the common law are all coextensive.

accept that premise.[20]

Every Texas court considering the question agrees that an insurer only breaches its duty of good faith and fair dealing when it lacks a reasonable basis for denying or delaying payment of the claim or when it should have known that no such basis existed.[21]

---

[20] After the close of the evidence the court instructed the jury that an unfair or deceptive trade practice under the DTPA involved:

(1) Misrepresenting to the insured pertinent facts or policy provisions relating to the coverage at issue, or
(2) failing to adopt and implement reasonable standards for prompt investigation of claims arising under an insurance company's insurance policies, or
(3) not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims submitted in which liability has become clear, or
(4) failing to exercise good faith in the investigation, processing, and denial of an insurance claim.

The court also instructed the jury on the common-law bad faith claim that Thrash was obligated to establish one of the following:

(1) State Farm had no reasonable basis for denial of Mr. Thrash's claim or for delay in payment; or
(2) State Farm failed to determine whether there was a reasonable basis for the denial or delay; or
(3) State Farm failed to promptly and equitably pay Mr. Thrash's claim when liability became reasonably clear.

Neither party objected to these instructions. We will assume that the court correctly instructed the jury on the duties created under the tripartite scheme recognized in **Vail** and say only that we find no plain error in the suggested description of the controlling law.

[21] E.g., **Aranda**, 748 S.W.2d at 212; **Arnold**, 725 S.W.2d at 167; **Murray v. San Jacinto Agency, Inc.**, 800 S.W.2d 826, 831 (Tex.

We therefore review the evidence in light of the instructions given, looking for evidence upon which reasonable jurors could conclude that State Farm breached its duty of good faith and fair dealing.

To succeed in his claim for payment under the policy Thrash had to prove that the conditions in the policy were satisfied. The burden then shifted to State Farm to prove arson as the cause of the fire. The question whether the decision to deny coverage amounts to a breach of State Farm's duty of good faith and fair dealing is entirely different, however; the burden there lies squarely on the plaintiff. After scouring the record, we conclude that no reasonable juror could have concluded that State Farm knew that it lacked a reasonable basis for believing that Thrash was responsible for the fire or, based on its duty to investigate, should have known the same.

Thrash argues that the investigator hired by State Farm did not conduct a sufficiently thorough physical investigation before concluding that he started the fire. While we reject Thrash's characterization of the instant investigation, we agree that there may be situations in which the selection of a third party to investigate a fire may be so suspect or the circumstances may so strongly indicate an inadequate investigation as to render the

1990) (stressing that the refusal to pay must be unreasonable). **State Farm Lloyds, Inc. v. Palasek**, 847 S.W.2d 279 (Tex.App. -- San Antonio 1992, no writ); **Terry v. Kentucky Cent. Ins. Co.**, 836 S.W.2d 812 (Tex.App. -- Houston [1st Dist.] 1992, no writ); **St. Paul Guardian Ins. Co. v. Luker**, 801 S.W.2d 614 (Tex.App. -- Texarkana 1990, no writ).

11

results of that investigation of no value. Indeed, there may be cases in which the very handling of the investigation is itself a violation of the duty of good faith and fair dealing insofar as the actions of the investigator can fairly be attributed to the insurer.[22] In either event, this is not such a case; the results of the investigation bolstered State Farm's already substantial and reasonable basis for denying Thrash's claim.

There is no evidence that a more thorough investigation would have uncovered evidence affirmatively disproving arson or Thrash's involvement, nor is there any indication that a more thorough investigation would otherwise have undermined State Farm's basis for so suspecting. Furthermore, even disregarding the results of the physical investigation, State Farm possessed overwhelming evidence of arson including the conclusion of the local fire marshal, evidence that Thrash purchased the policy shortly before the fire, was the last person seen at the house before the fire, and that he moved many if not most of his belongings from the house shortly before the fire.

We must judge the insurer's actions against a standard of reasonableness as of the time of its challenged decision in light of all relevant circumstances. That the jury may have decided Thrash did not commit arson is not dispositive of this issue. State Farm is not bound to prove that it was correct in its judgment; rather, it was for Thrash to prove that it had no

---

[22] See **Automobile Ins. Co. v. Davila**, 805 S.W.2d 897 (Tex.App. -- Corpus Christi 1991, writ denied).

12

reasonable basis for denying his claim.[23]  We conclude and hold that such a basis existed as a matter of law and that State Farm did not breach its duty of good faith and fair dealing.  Accordingly, we reverse the award of $2,000 in mandatory treble damages under section 17.50(b)(1) of the DTPA.  We likewise reverse the award of $200,000, premised on a finding of mental anguish and violation of the DTPA.[24]  Only the contractual damages under the policy may be awarded.

The judgment appealed is REVERSED and judgment in favor of State Farm is RENDERED.

---

[23] **Texas Empl. Ins. Ass'n v. Puckett**, 822 S.W.2d 133 (Tex.App. -- Houston [1st Dist.] 1991, <u>writ</u> <u>denied</u>).

[24] The only evidence adduced at trial to support an award to compensate for mental anguish was Thrash's and his family's testimony to the effect that Thrash was "embarrassed and worried" over this lawsuit.  Texas law does not recognize as compensable mere worry or embarrassment.  **Hicks v. Ricardo**, 834 S.W.2d 587 (Tex.App. -- Houston [1st Dist] 1992 <u>no</u> <u>writ</u> <u>history</u>).  Thrash's argument that the refusal to pay constituted libel *per se* for which no proof of injury is required, suspect as it is, will not be considered for the first time on appeal.