United States Court of Appeals,

Fifth Circuit.

No. 93-5435.

Michael HOGUE and Carol Hogue, Plaintiffs-Appellants,

v.

UNITED OLYMPIC LIFE INSURANCE COMPANY, Delaware Administrators, and
Consultants & Administrators, Inc., Defendants-Appellees.

Dec. 7, 1994.

Appeal from the United States District Court for the Eastern District of Texas.

Before GARWOOD, JOLLY and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Michael and Carol Hogue appeal the judgment of the district court dismissing their claims
resulting from the termination of their insurance policy with United Olympic Insurance Company.
For the following reasons, the judgment of the district court is affirmed.

BACKGROUND

Michael and Carol Hogue were insured by United Olympic Life Insurance Company ("United
Olympic"). Their policy was part of a large group of policies in what was called the "Med-
Preference" or "Med-Choice" Trust ("the Old Trust"). On July 1, 1990, the Hogues' health insurance
premiums were increased by 18 percent. At that time the Hogues' policy offered the following
benefits: United Olympic would pay 80 percent (co-payment) of the first $5,000 in claims after the
deductible, then pay 100 percent of any claims beyond that amount. By letter dated November 29,
1990, the Hogues were notified that their benefits were being reduced to a 60 percent co-payment
and $10,000 stop-loss. That change was to take effect on February 1, 1991. The premiums remained
the same. But another letter dated January 22, 1991, notified the Hogues that their premiums would
increase on March 1, 1991, by 413 percent. However, one month before the increase went into effect
the Hogues stopped paying their premiums; the policy lapsed on January 31, 1991, for nonpayment
of premiums.

It was later learned that United Olympic had decided to split the group of policyholders into

two groups. Those who had filed claims equaling less than 80 percent of their premiums paid were moved into a new trust. Those whose paid/loss ratios were more than 80 percent, which included the Hogues, remained in the old trust. Everyone in the old trust was subjected to the large increase in premiums.

After their insurance policy was cancelled, the Hogues sued United Olympic for discrimination, misrepresentation, unconscionable acts, breach of contract, and for a declaratory judgment that United Olympic was responsible for future medical costs. A request for a jury trial was made, but was denied as untimely. A bench trial was held and the trial court found for United Olympic.

## DISCUSSION

*Discrimination Claim*

The Hogues contend that the district court erred in not finding that United Olympic had discriminated against them by leaving them in the Old Trust when it was split up. Under Texas law, it is unlawful to make or permit:

> any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premiums, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatsoever.

Tex.Ins.Code art. 21.21 § 4(7)(b). The Hogues argue that, by placing them in a trust based on profitability, they were unlawfully discriminated against. We disagree.

In order to prevail on a claim of insurance discrimination, the Hogues had to show that other individuals of the same class and hazards as them were charged lesser premiums or were given greater benefits. *Reeves v. New York Life Insurance Co.,* 421 S.W.2d 686, 688 (Tex.Civ.App.1967). No evidence was offered about other insureds who might have been charged a greater rate or received a greater benefit. The Hogues have thus failed to meet their burden of proof.

*Unconscionability Claim*

The Hogues contend that categorizing them into the Old Trust was unconscionable and thus violated section 17.45(5) of the Texas Consumer Protection Act. Under Tex.Bus. & Com.Code § 17.45(5), an unconscionable act is one which "takes advantage of the lack of knowledge, ability,

experience, or capacity of a person to a grossly unfair degree" or "results in a gross disparity between the value received and consideration paid in a transaction involving the transfer of consideration."

After examining the record, we see no evidence that United Olympic performed any unconscionable acts. At trial, United Olympic's actuarial expert testified that the trust was split because the particular group of insurance policies was losing money. He stated that this action was one in a series of actions that United Olympic undertook in order to preserve the viability of the insurance policies in the trust. The uncontroverted evidence thus shows that United Olympic operated based on actuarial considerations to shore up losses in an unprofitable insurance group. There is no evidence that United Olympic tried to take advantage of the Hogues as contemplated by the statute. There is also no evidence that United Olympic took more in consideration than the Hogues paid in consideration. We therefore find the Hogues have failed to prove that United Olympic's actions were unconscionable.

*Misrepresentation Claim*

The Hogues contend that United Olympic made actionable misrepresentations in letters it sent to them to persuade them to take out the insurance policy. A party makes an actionable misrepresentation under Texas law by "[m]aking, issuing, circulating, or causing to be made, issued or circulated any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby ... or making any misleading representation or any misrepresentations as to the financial strength of the insurer." Texas.Ins.Code art. 21.21 § 4(1). Puffing i.e. loose general statements made by the sellers is not actionable as a misrepresentation. *Presidio Enterprises v. Warner Brothers,* 784 F.2d 674, 686 (5th Cir.1986). The district court found that the letters were just puffing and after reading the letters, we agree.

The letters make statements that United Olympic is a good insurance company that is able and willing to undertake the commitment of the Hogues insurance. There are no promises or any other statements in the letters that would indicate that United Olympic would not raise their premiums, cancel their policy or do anything else to that effect. We find that the statements in the letters were just "puffery" and are not actionable under Tex.Ins.Code art. 21.21.

*Continuing Responsibility for Medical Payments*

The Hogues contend that United Olympic is still responsible for any claim that arose while the policy was still in force. They rely on the last sentence of Tex.Ins.Code art. 3.70-3(B)(6) which states that: "Cancellation shall be without prejudice to any claim originating prior to the effective date of cancellation." The Hogues contend that this section of the insurance code restricts United Olympic from cancelling the insurance policy and thus ceasing to pay benefits.

However Tex.Ins.Code art. 3.70-8 states that "[n]othing in this act shall apply to or affect ... (3) any blanket or group insurance policy." A group insurance policy is a policy issued by an employer, an association, or other qualified groups. Tex.Ins.Code art. 3.51-6 § 1(a)(1-5). Our review of the evidence reveals that the Hogues initially bought their insurance coverage by becoming a member of a consumer association which entitled them to be issued a group policy under the association's banner. *See* Tex.Ins.Code art. 3.51-6 § 1(a)(2). United Olympic became the Hogues' insurer when it assumed the responsibility for the policies after two previous insurance associations failed. After United Olympic became insurer, the Hogues' policy and the other policies continued to be administered as group insurance policies. Their policy book stated it was a group insurance policy and they were given a group rate. We find that the Hogues policy was a group policy and thus Tex.Ins.Code art. 3.70-3(B)(6) is inapplicable to this case.

*Breach of the Duty of Good Faith*

The Hogues contend that United Olympic breached its duty of good faith and fair dealing by refusing to pay for medical bills after the policy had lapsed and by undertaking a subterfuge to render them uninsurable. In *Thrash v. State Farm Fire & Casualty Co.,* 992 F.2d 1354 (5th Cir.1993), this court stated that an insurer breaches its duty of good faith and fair dealing "*only* when it lacks a reasonable basis for denying or delaying payment of the claim when it knew or should have known no such basis exists." *Id.* at 1358 (emphasis added). The evidence at trial showed that United Olympic paid all claims as they became due. These claims amounted to approximately $26,500 while the Hogues only paid $3,658.42 in premiums. Thus, United Olympic has fulfilled its duty of good faith and fair dealing by paying all claims due while the policy was in effect. We find this contention

to be without merit.

*Jury Demand*

The Hogues contend that the district court erred in finding that they had not made a timely jury demand. The district court denied the Hogues jury request holding that the jury demand had not been filed within ten days of removal as required by Fed.R.Civ.P. 81(c). The Hogues argue for the first time on appeal that pursuant to Fed.R.Civ.P. 38(b), they only had to file a jury demand within ten days after United Olympic filed its answer, which they did given the time allowances for filing by mail. An issue not raised in the district court will not be considered on appeal unless the issue can be resolved as a matter of law and unless failure to do so would result in grave injustice. *Callejo v. Bancomer,* 764 F.2d 1101, 117 n. 20 (5th Cir.1985). Having reviewed the entire record and the applicable law, we find no error in the district court's denial of the Hogues' jury demand.

CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.