TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







ON MOTION FOR REHEARING









NO. 03-99-00846-CV






Antonio Cortez, Appellant




v.




Progressive County Mutual Insurance Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 97-05861, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 We withdraw our original opinion and judgment issued August 10, 2000, and
substitute this one in its place. Antonio Cortez appeals from a summary judgment rendered against
him in favor of appellee Progressive County Mutual Insurance Co. ("Progressive") in an insurance
discrimination case. See Tex. Ins. Code Ann. art. 21.21-8 (West Supp. 2001). We will reverse.


BACKGROUND


 In 1996, Cortez purchased a new insurance policy from Progressive through its
independent agent, Angel Insurance Group ("Angel"). Angel earned a ten percent commission on
the policy--an amount that was passed through to Cortez as a part of his premium. Cortez later
learned that Progressive offers its independent agents a variable commission program in which
agents choose how much commission they receive so that policyholders pay a variety of premiums
depending upon their agent's commission. (1)

 In May 1997, Cortez filed suit "on behalf of himself and those similarly situated,"
alleging that Progressive's variable commission program violates article 21.21-8 of the Insurance
Code "by charging consumers of the same risk a different rate based on the agent's commission
level." (2) See Tex. Ins. Code Ann. art. 21.21-8. In his first amended original petition, Cortez alleged
actual damages "in an amount equal to the difference between the actual commission and a 5%
commission [the lowest commission Progressive agents charged]."

 Over the next two years, the parties litigated the composition of the class and the
scope of discovery. Each side filed a motion for summary judgment. The court denied 
Progressive's motion and never expressly ruled on Cortez's motion. In August 1999, Progressive
filed a second motion for summary judgment, contending that Progressive had not engaged in unfair
discrimination and that Cortez had not suffered economic damage. Following a hearing on the
motion, the trial court rendered judgment in favor of Progressive. Cortez then filed this appeal. 


DISCUSSION


 A party, without presenting summary judgment evidence, may move for summary
judgment on the ground that there is no evidence of one or more essential elements of a claim on
which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). Progressive
effectively brought a no-evidence summary judgment, asserting that there was no evidence of either
unfair discrimination or economic damages as required under article 21.21-8 of the Insurance Code. 
See Tex. Ins. Code Ann. art. 21.21-8. The trial court, in its order granting summary judgment,
concluded that "unfair discrimination," within the meaning of article 21.21-8, is defined by the
specific definition found in article 21.21-6 of the Insurance Code, (3) and that Cortez had not shown
any probative evidence of unfair discrimination or economic damages. See id. arts. 21.21-6, 21.21-8
(West Supp. 2001). Based on these conclusions, the trial court granted Progressive's second motion
for summary judgment on the specific grounds raised in Progressive's motion. 

 Cortez contends that the court erred in (1) addressing the issue of "unfair
discrimination" under article 21.21 of the Insurance Code because it is not specifically raised in
Progressive's summary judgment motion (4) and (2) concluding that the definitions of "unfair
discrimination" in articles 21.22-6 and 21.21-8 are the same. (5)

 Progressive entitled the third basis in its motion for summary judgment, "Progressive
has not engaged in 'unfair discrimination.'" The section notes that "[t]he meaning of 'unfair
discrimination' has been a moving target throughout this case"; discusses the type of conduct article
21.21-6 prohibits; claims that "without attempting a precise definition of 'unfair discrimination,' the
Progressive variable commission Program is not it"; and asserts that the "difference in its premiums
has a completely rational basis, the difference in cost, and is not 'unfair discrimination.'" 
Progressive clearly argues that its conduct did not constitute "unfair discrimination" under article
21.21-8. To address this argument, the trial court necessarily had to determine what constitutes
"unfair discrimination." We overrule appellant's first point of error to the extent it contends that the
meaning of "unfair discrimination" was not raised in Progressive's motion. Having determined that
there was no procedural error in the trial court's addressing the meaning of "unfair discrimination,"
we turn now to the substance of the interpretation, bearing in mind that statutory interpretation is a
question of law, which we review de novo. See Lopez v. Texas Workers' Compensation Ins. Fund,
11 S.W.3d 490, 494 (Tex. App.--Austin 2000, pet. denied).

 Our objective when we construe a statute is to determine and give effect to the
legislature's intent. Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex.
1998); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994). A fundamental rule
of statutory construction is that a court should first ascertain the legislature's intent in enacting the
statute as expressed in its plain language. Schorp v. Baptist Mem'l Health Sys., 5 S.W.3d 727, 734
(Tex. App.--San Antonio 1999, no pet.) (citing St. Luke's Episcopal Hosp. v. Agbor, 952 S.W.2d
503, 505 (Tex. 1997)). If the disputed statute is clear and unambiguous, extrinsic aids and rules of
construction are inappropriate, and the statute should be given its common meaning. St. Luke's
Episcopal Hosp., 952 S.W.2d at 505. Courts may not by implication enlarge the meaning of any
word in the statute beyond its ordinary meaning. Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex.
1994); Sexton v. Mount Olivet Cemetery Ass'n, 720 S.W.2d 129, 138 (Tex. App.--Austin 1986, writ
ref'd n.r.e.).

 The plain language of article 21.21-6 states that "[n]o person shall engage in any
practice of unfair discrimination which is defined in this article. . . ." Id. art. 21.21-6, § 1. Section
three of that article specifically states that "'[u]nfair discrimination' means," among other things,
discrimination based on "race, color, religion, or national origin"; "age, gender, marital status, or
geographic location of the individual"; or "disability or partial disability." Id. art. 21.21-6, § 3. 
Thus, article 21.21-6 prohibits discrimination based on membership in a certain, protected class.

 Article 21.21-8, on the other hand, states that 


No person shall engage in any unfair discrimination by making or permitting any
unfair discrimination between individuals of the same class and of essentially the
same hazard in the amount of premium, policy fees, or rates charged for any policy
or contract of insurance or in the benefits payable thereunder, or in any of the terms
or conditions of such contract of insurance or in the benefits payable thereunder, or
in any of the terms or conditions of such contract, or in any other manner whatever.



Id. art. 21.21-8, § 2. Section 3 of article 21.21-8 indicates that a person who has sustained economic
damages as a result of another's engaging in unfair discrimination, as defined in Section 2 of that
article, may maintain an action against the person or persons engaging in such acts or practices. Id.
art. 21.21-8, § 3. It is an affirmative defense to the prohibited discrimination if the insurer can show
that the discrimination is "based upon sound actuarial principles." Id. art. 21.21-8, § 4.

 The meaning of a term in different sections of a statute must be considered in the
different contexts in which the word is found in the separate sections. Casas Ford, Inc. v. Ford
Motor Co., 951 S.W.2d 865, 870 (Tex. App.--Texarkana 1997, writ denied) (citing Paddock v.
Siemoneit, 218 S.W.2d 428, 435 (Tex. 1949)). A plain reading of articles 21.21-8 and 21.21-6
reveals key differences between the meaning of "unfair discrimination" in each article. Unfair
discrimination in article 21.21-6 is specifically defined as discrimination based on certain,
enumerated classifications such as race, color, religion, national origin, age, gender, marital status,
geographic location, and disability. Tex. Ins. Code Ann. art. 21.21-6. Thus, while article 21.21-6
prohibits discrimination based on differential treatment of members of different classes, article
21.21-8 prohibits discrimination based on differential treatment between individual members within
the same class. 

 Supporting our conclusion that the unfair discrimination in article 21.21-8 differs
from that articulated in article 21.21-6 are the internal references in each article to their respective
definitions of unfair discrimination. Section 3 of article 21.21-8 references "unfair discrimination,
as defined in Section 2 of [that] article." Id. art. 21.21-8, § 3. Article 21.21-8's reference to the
definition of unfair discrimination in section 2 of that article indicates that article 21.21-8 has its own
definition of unfair discrimination, separate from that defined in article 21.21-6. We agree with
Cortez that the plain language of article 21.21-8 provides a definition of unfair discrimination and
that looking exclusively to article 21.21-6 to define such term would ignore the plain language of
article 21.21-8.

 In addition to ascertaining the legislature's intent from the plain and common
meaning of the words used, we may also consider, among other things, the circumstances under
which a statute was enacted, former statutory provisions, including laws on the same or similar
subjects, and the consequences of a particular construction. Kroger Co. v. Keng, 23 S.W.3d 347,
349 (Tex. 2000). Our plain language interpretation of article 21.21-8 is further supported by
construction of former article 21.21, section 4(7)(b) of the Insurance Code, a provision repealed at
the same time article 21.21-8 was enacted, with language almost identical to that currently found in
article 21.21-8. (6)

 Former section 4(7)(b) of article 21.21 prohibited 


any unfair discrimination between individuals of the same class and of essentially the
same hazard in the amount of premiums, policy fees, or rates charged for any policy
or contract of accident or health insurance or in the benefits payable thereunder, or
in any of the terms or conditions of such contract, or in any other manner whatsoever. 



The Court of Appeals for the Fifth Circuit interpreted this section and concluded that "in order to
prevail on a claim of insurance discrimination, the [plaintiffs] had to show that other individuals of
the same class and hazards as them were charged lesser premiums or were given greater benefits." 
Hogue v. United Olympic Life Ins. Co., 39 F.3d 98, 100 (5th Cir. 1994). The court did not discuss
whether the plaintiffs were members of any specific, protected class. Instead, the issue was the
treatment of the plaintiffs in comparison to other similarly situated individuals. See also Reeves v.
New York Life Ins. Co., 421 S.W.2d 686, 688 (Tex. Civ. App.--Dallas 1967, writ ref'd n.r.e.)
(failing to find, in construing section 4(7)(b) of article 21.21, that "any other individual 'of the same
class and of essentially the same hazard' was charged a lesser premium than that charged appellant"). 
We find the construction of this similar statute instructive. 

 Nothing in the plain language of article 21.21-8 suggests that unfair discrimination
described in that section requires proof that the discrimination was based on a specific classification
such as race, color, age, gender, or disability. Because the legislature did not include such a
requirement in article 21.21-8, the trial court may not enlarge the meaning of that term. See
Sorokolit, 889 S.W.2d at 241.

 Furthermore, construction of a statute by the administrative agency charged with its
enforcement is entitled to serious consideration, as long as the construction is reasonable and does
not contradict the plain language of the statute. Gene Hamon Ford, Inc. v. David McDavid Nissan,
Inc., 997 S.W.2d 298, 305 (Tex. App.--Austin 1999, pet. denied) (citing Tarrant Appraisal Dist.
v. Moore, 845 S.W.2d 820, 823 (Tex. 1993)). As long as the agency's ruling constitutes a reasonable
reading of the statute, this Court will affirm if that reading is in harmony with the rest of the statute,
even if other reasonable interpretations exist. Id. (citing City of Plano v. Public Util. Comm'n, 953
S.W.2d 416, 421 (Tex. App.--Austin 1997, no writ)).

 The Texas Department of Insurance (the "Department"), headed by the Commissioner
of Insurance, is the state agency that regulates the business of insurance in Texas. Tex. Ins. Code
Ann. §§ 31.002, 31.021 (West Supp. 2001). The Department, in its amicus brief in support of
rehearing, states that "Article 21.21-8 was intended to expand the rule against discrimination
between insureds of the same risk class by making it applicable to all insurers, not to restrict the
concept of unfair discrimination to the definition contained in Article 21.21-6." The Department
further contends that article 21.21-8 is the latest in a long series of Texas statutes designed to
prohibit disparate treatment between insureds of essentially the same risk. The Department's
interpretation thus also supports our determination that unfair discrimination within the meaning of
article 21.21-8 is not defined by article 21.21-6. The trial court below therefore erred in so
concluding in its summary judgment order. Article 21.21-8 prohibits unfair discrimination between
similarly situated insureds, without regard to whether such insureds belong to a particular group,
such as those specified in article 21.21-6.

 Having determined the meaning of "unfair discrimination" in article 21.21-8, we now
review the propriety of the trial court's grant of summary judgment in favor of Progressive on the
ground that Cortez had not shown any probative evidence of unfair discrimination or economic
damages under article 21.21-8. A no-evidence summary judgment is properly granted if the
nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue
of material fact as to an essential element of the nonmovant's claim on which the nonmovant would
have the burden of proof at trial. See Tex. R. Civ. P. 166a(i); Merrell Dow Pharm., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997), cert denied, 118 S. Ct. 1799 (1998). Less than a scintilla of
evidence exists when the evidence is "so weak as to do no more than create a mere surmise or
suspicion" of a fact, and the legal effect is that there is no evidence. Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla of evidence exists when the evidence
supporting a finding "rises to a level that would enable reasonable and fair-minded people to differ
in their conclusions." Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995). The
appellate court must consider all of the evidence in the light most favorable to the party against
whom the no-evidence summary judgment was rendered, and every reasonable inference must be
indulged in favor of the nonmovant and any doubts resolved in its favor. Qantel Bus. Sys., Inc. v.
Custom Controls Co., 761 S.W.2d 302, 303-04 (Tex. 1988). 

 Cortez alleges that Progressive has inherently engaged in unfair discrimination merely
by having three different levels of commission rates, thereby enabling its agents to charge similarly
situated insureds varying premiums, and that "[p]aying a 10% commission rate for the same
coverage, same policy, same company that can be obtained at a 7% commission rate is unfair." 
Cortez claims that the mere fact that he paid a ten percent commission rate versus a seven percent
commission rate evidences both unfair discrimination and economic damages.

 In support of his allegations, Cortez adduced some evidence of the following facts. 
Progressive allows its agents to charge three different commission rates, which leads to insureds
being charged three different premiums or rates for insurance. Progressive's underwriting
guidelines, however, are the same, regardless of which commission level an agent chooses, and
Progressive receives the same amount of premium after commission for any individual risk
regardless of the commission level selected by an agent. Progressive admits that "[u]nder
Progressive's Alternative Commission Program, it is possible for two individuals of the same class
and of essentially the same hazard to be charged different rates based solely on the amount of the
commission level."

 Cortez based his action upon his dealings with Angel, Progressive's agent. Angel,
as a matter of business policy, supposedly determined that it could not write insurance at a
commission rate of less than ten percent and remain viable. Summary judgment evidence reveals,
however, that Angel used a commission rate other than the ten percent Advantage rate in two percent
of its insurance underwriting for Progressive, and that, during the time period in which Cortez
purchased his policy through Angel, Angel charged the lower, seven percent Supersaver commission
rate on at least one occasion. Thus, the record shows that insureds who obtained insurance from
Angel paid different amounts of commissions and therefore paid differing premiums. Although a
question of material fact remains as to whether any individual who paid the lower, seven percent
commission rate was of the same class and essentially the same hazard as Cortez, indulging every
reasonable inference in favor of Cortez and taking evidence favorable to him as true, we conclude
that Cortez produced at least some probative evidence that Progressive engaged in unfair
discrimination by making or permitting unfair discrimination between individuals of the same class
and essentially the same hazard in the amount of premiums or rates charged for insurance. The
summary judgment based on Progressive's first summary judgment ground, contending that Cortez
suffered no "unfair discrimination," was therefore improper, and we consequently reverse the trial
court's grant of summary judgment on that point.


CONCLUSION


 We hold that the trial court erred in concluding that unfair discrimination within the
meaning of article 21.21-8 is defined by the specific definition in article 21.21-6. Further, because
an issue of material fact remains as to whether Progressive engaged in unfair discrimination, we hold
that the trial court's grant of summary judgment was improper. We accordingly reverse the trial
court's grant of summary judgment and remand this cause for further proceedings.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith 

Reversed and Remanded

Filed: September 13, 2001

Publish

1. Progressive's variable commission plan has three levels from which an agent can choose. If
the agent chooses the "Classic" level, the agent will receive a fifteen percent commission on a new
policy and twelve percent on the renewal of that policy. At the "Advantage" level, the agent receives
ten percent on a new policy and eight percent on renewal. For "Supersaver" policies, agents receive
a seven percent initial commission and a five percent renewal commission. Commissions are added
to the rate of the policy so that consumers pay varying amounts depending on the commission level
the agent elects. Progressive receives the same amount of premium for insureds of the same class
and essentially the same hazard regardless of the commission the agent charges.
2. Because no class certification hearing was held, this appeal is limited to Cortez's individual
suit.
3. There are two articles labeled article 21.21-6 in the Texas Insurance Code. We deal here with
the article 21.21-6 entitled "Unfair Discrimination."
4. Citing IKB Industries (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 441 (Tex. 1997),
Cortez also asserts that "findings of fact and conclusions of law do not belong in a summary
judgment order." Cortez mischaracterizes that case. In Pro-Line, the supreme court addressed
whether a party could extend its appellate timetable by requesting findings of fact and conclusions
of law after its case was dismissed with prejudice as a sanction for discovery abuse. See id. at 440. 
The court distinguished the situation in Pro-Line from that in Linwood v. NCNB Texas, 885 S.W.2d
102 (Tex. 1994), wherein the court held that "findings of fact and conclusions of law have no place
in a summary judgment proceeding." Pro-Line, 938 S.W.2d at 441 (emphasis added) (quoting
Linwood, 885 S.W.2d at 103). The Pro-Line court noted that because a summary judgment involves
only those legal issues raised in the motion and response and fact issues, findings and conclusions
would serve no purpose and therefore parties could not extend the appellate timetable by requesting
such pointless findings. See id. at 441-42. However, neither Linwood nor Pro-Line prohibits a trial
court from including a recitation of material facts and construction of material statutes in a summary
judgment order. We therefore overrule appellant's first point of errorto the extent it claims
otherwise.
5. The following amici curiae join Cortez in support of his position that the trial court erroneously
concluded that the definitions of "unfair discrimination" in articles 21.21-6 and 21.21-8 are the same:
Mark L. Kincaid; the Office of Public Insurance Council of the State of Texas; and the Texas
Department of Insurance.
6. Article 21.21, section 4(7)(b) was repealed by the 74th Legislature (Act of May 17, 1995, 74th
Leg., R.S., ch. 414, sec. 11, § 4(7)(b), 1995 Tex. Gen. Laws 2988, 2998 (since repealed)), the same
bill which enacted the current article 21.21-8. See Act of May 17, 1995, 74th Leg., R.S., ch. 414,
§ 16, 1995 Tex. Gen. Laws 2988, 3002 (since codified at Tex. Ins. Code Ann. art. 21.21-8 (West
Supp. 2001)). Article 21.21, section 4(7)(b) was almost identical to current article 21.21-8; the only
difference is that the repealed section was restricted to accident and health insurance policies,
whereas article 21.21-8 contains no such restriction, broadening its applicability to other insurers as
well.