United States Court of Appeals
Fifth Circuit

**F I L E D**

April 17, 2006

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
For the Fifth Circuit*

---

No. 04-11161

---

NATIONAL PRESORT SERVICES, INC.,

Plaintiff - Counter Defendant - Appellee,

v.

ACS STATE AND LOCAL SOLUTIONS, INC.; ET AL,

Defendants,

ACS STATE AND LOCAL SOLUTIONS, INC.,

Defendant - Counter Claimant - Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:03-CV-338-K

---

Before JONES, Chief Judge, and DeMOSS and OWEN, Circuit Judges.

PER CURIAM:[*]

In this diversity case a prime contractor, ACS State and Local Solutions, Inc.,

terminated in part its subcontract with National Presort Services, Inc. The district court

granted partial summary judgment that ACS breached an obligation to reimburse National

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Presort for the cost of unused supplies and storage fees.  Following a jury verdict favorable to National Presort on its damage claims and ACS's breach-of-contract counterclaim, the district court entered final judgment in National Presort's favor.  We VACATE the summary judgment with regard to National Presort's breach-of-contract claim and REMAND the case to the district court for further proceedings.

# I

ACS's predecessor-in-interest, Lockheed Martin IMS, Inc., contracted with the Office of the Attorney General for the State of Texas (OAG) to provide certain services in connection with collection and distribution of child support payments (the prime contract).  Lockheed subsequently subcontracted some of its duties under the prime contract to National Presort.  The subcontract incorporated by reference all the provisions of the prime contract:

**2.0   PRIME CONTRACT**

Notwithstanding any other provision of this Agreement, this Agreement is a subcontract under the Prime Contract and *each and every provision* of the Prime Contract and any amendments thereto shall extend to and be binding upon SUBCONTRACTOR *as part of this Agreement*.  With respect to any references in the Prime Contract to CONTRACTOR and OAG for purposes and applicability to this Subcontract, CONTRACTOR shall mean and include SUBCONTRACTOR, and OAG shall mean and include CONTRACTOR.[1]

The subcontract also provided a method of resolving any conflict or inconsistency among the various documents governing the parties' relationship, giving the terms of the prime contract precedence over the terms of the subcontract:

---

[1]Emphasis added.

**1.0    APPLICABLE DOCUMENTS**

1.1    Interpretation

Attachments I-IV are attached to and form a part of this Agreement.  In the event of any conflict or inconsistency in the definition or interpretation of any word, responsibility, schedule, or the contents or description of any task, deliverable, goods, service, or other work, or otherwise, between the Prime Contract and the body of this Agreement and the Exhibits thereto, or between such documents, such conflict or inconsistency shall be resolved by giving precedence to the documents according to the following priority:

| | |
|---|---|
| First | ATTACHMENT I:  The PRIME CONTRACT between CONTRACTOR and STATE for the Texas State Disbursement Project |
| Second | ATTACHMENT II:  The Office of the Attorney General, State of Texas Request for Proposal (RFP) for the State Disbursement Unit Services, its Amendments and the written answers to questions regarding the RFP |
| Third | The body of this AGREEMENT |
| Fourth | National Presort Services' STATEMENT OF WORK, Exhibit 1 |
| Fifth | National Presort Services' PAYMENT PROVISIONS, Exhibit 2 |

ACS subsequently acquired Lockheed and shortly thereafter gave National Presort notice that it was terminating some of National Presort's responsibilities under the subcontract pursuant to paragraph MM of the prime contract.  This provision, which was incorporated into the subcontract pursuant to section 2.0, provides:

**MM.  Termination of the Contract**

1.    Convenience of the State of Texas
OAG reserves the right to terminate the contract at any time, in whole or in part, *if the OAG determines that a termination is in the State's interest.  The OAG will terminate the contract by providing the Contractor with sixty (60) calendar days advance written notice specifying the extent of termination and the effective date.*  In the event of such a termination, the Contractor shall, unless otherwise mutually

3

agreed upon in writing, cease all affected work immediately upon the effective date of termination. *OAG shall be liable for payments for terminated services performed under the contract up to the effective date of termination. Payment for such services will be made in accordance with Sections VIII.D and IX. The OAG shall have no other liability; including no liability for any costs associated with the termination* including, but not limited to, implementation cost (such as facilities acquisition and build out), acquisition cost for infrastructure items (such as equipment, computer hardware and software), termination and settlement of leases and subcontracts, storage and transportation, and personnel relocation.[2]

The subcontract also contains its own provision governing contract termination. The subcontract provides that ACS can terminate the subcontract at any time, for any reason, provided ACS reimburses National Presort for the costs of supplies and storage that National Presort has incurred in connection with the subcontract:

**8.0    Termination**

CONTRACTOR shall have the right to terminate this Agreement, independent of any OAG right to terminate.

In the event the CONTRACTOR terminates the contract *for any reason*, The [sic] *CONTRACTOR shall reimburse the SUBCONTRACTOR* for the cost of all unused envelopes, printed forms, paper and other materials, including all such items not yet produced but under contract for production. Reimbursable cost shall include costs of storage of such materials and costs of their disposal.[3]

After receiving the notice of partial termination, National Presort sought reimbursement based on section 8.0 of the subcontract. National Presort sued for breach of

---

[2]Emphasis added.

[3]Emphasis added.

4

contract when ACS refused to pay the full amount National Presort claimed was due for supplies and storage. ACS denied liability based on paragraph MM of the prime contract, contested the reasonableness of the amount of damages sought, filed a breach-of-contract counterclaim based on National Presort's allegedly substandard performance, and requested a declaration that ACS is not liable for any damages. ACS asserted that section 8.0 is inapplicable to a partial termination of the subcontract, and even if it were applicable, the terms of the prime contract, including paragraph MM, take precedence over the terms of the subcontract.

With the district court's permission, National Presort filed a motion for partial summary judgment on the eve of trial, asserting the subcontract is unambiguous and the parties intended section 8.0 to apply to any termination of the subcontract. The next day, the district court granted the motion for partial summary judgment, holding that section 8.0 controlled termination of the subcontract and ACS breached its express obligation to reimburse National Presort for the specified expenses. The court determined that paragraph MM is inapplicable because (1) ACS provided no rationale for its authority to terminate the subcontract "in the State's interest," (2) the prime contract's provisions are relevant only in the event of an inconsistency with the subcontract, (3) section 8.0 controls because it is more specific, and (4) application of paragraph MM would render section 8.0 meaningless. The court also gave ACS seventeen days to file a motion to reconsider the summary judgment order, recognizing that ACS did not have an adequate opportunity to respond to the motion.

The case then proceeded to a jury trial on National Presort's damages, attorney's fees, and ACS's breach-of-contract counterclaim. The jury was instructed that ACS breached the subcontract. The jury returned a verdict rejecting ACS's counterclaim and awarding National Presort $112,000 in actual damages, $130,000 in attorney's fees for trial court proceedings, and $35,000 in attorney's fees for any appellate proceedings. Shortly thereafter, ACS asked the court to reconsider summary judgment on the breach-of-contract issue, arguing that it did not breach the contract because (1) paragraph MM takes precedence over section 8.0 under the express terms of the subcontract, (2) section 8.0 is inapplicable to a partial termination of the subcontract, (3) there was at least some evidence that termination was in the State of Texas's interest, and (4) ACS offered to pay for some of National Presort's claimed expenses. ACS further complained that the district court's failure to give ACS at least ten days to respond to the summary judgment motion as required by FED. R. CIV. P. 56(c) was harmful error.

After considering the motion for reconsideration and supporting evidence, the district court denied the motion. The district court reiterated its conclusion that, under section 1.1 of the subcontract, the prime contract's provisions only come into play if there is a conflict between the terms of the prime contract and the subcontract. The court then concluded that section 8.0 does not conflict with paragraph MM because the latter only applies to the OAG's ability to terminate the prime contract and does not "speak to" the relationship between National Presort and ACS. Although the court conceded that it was error to rule on

6

the summary judgment motion before ACS had an adequate opportunity to respond, the court concluded the error was cured by giving ACS an opportunity to file its motion for reconsideration and present responsive evidence.

On appeal, ACS challenges the summary judgment on its merits and also argues the summary judgment order must be vacated and a new trial ordered because of the district court's procedural error.[4]

## II

The Federal Rules of Civil Procedure allow a party responding to a motion for summary judgment ten days to present argument and evidence in opposition to the motion.[5] This court strictly enforces the ten-day notice requirement and has vacated summary judgments and remanded for further proceedings when the district court did not provide notice prior to granting summary judgment even if "'summary judgment may have been proper on the merits.'"[6] As the district court acknowledged in its order on ACS's motion for reconsideration, the court erred by granting National Presort's motion for partial summary judgment without giving ACS at least ten days to respond. However, "the harmless error

---

[4]ACS has not appealed the jury's award of damages, the adverse jury finding on its breach-of-contract counterclaim, or the district court's adverse summary judgment on ACS's claims for business reputation damages and declaratory relief.

[5]FED. R. CIV. P. 56(c).

[6]*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1397-98 (5th Cir. 1994) (quoting *Judwin Props., Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 437 (5th Cir. 1992)) (involving *sua sponte* summary judgment granted without at least ten-days notice as required by rule 56(c)).

doctrine applies to lack of the notice required by Rule 56(c)."[7] Failure to provide adequate notice is harmless when the non-moving party either admits that it had no additional evidence to present or had an opportunity to present additional evidence and that evidence does not raise a genuine issue of material fact.[8]

In this case, the district court gave ACS seventeen days after summary judgment was granted to present argument and evidence. Any error in failing to give notice was therefore harmless, and we will proceed to the merits of the parties' contentions.

## III

We review a summary judgment *de novo*, applying the same standard applied by the district court.[9] Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[10] The parties agree that Texas substantive law applies in this diversity case.[11]

Under Texas law, separate agreements may be incorporated by reference into a signed

---

[7]*Powell v. United States*, 849 F.2d 1576, 1580 (5th Cir. 1988).

[8]*Id.*

[9]*Allstate Ins. Co. v. Disability Servs. of the Sw., Inc.*, 400 F.3d 260, 262-63 (5th Cir. 2005).

[10]FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[11]*See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Thrash v. State Farm Fire & Cas. Co.*, 992 F.2d 1354, 1356 (5th Cir. 1993) ("In a diversity case state law provides the elements of the plaintiff's case." (citation omitted)).

contract.[12]  No particular language is required to incorporate a document by reference; all that is necessary is that the parties' intent is plainly expressed.[13]  "When a document is incorporated into another by reference, both instruments must be read and construed together."[14]

Our initial inquiry is whether the subcontract is ambiguous with regard to termination. In arguing that section 8.0 is the sole governing termination provision, National Presort repeatedly refers to parol evidence of what the parties intended with respect to termination of the subcontract and submitted evidence that the terms of section 8.0 were specifically negotiated by the parties.  Generally speaking, parol evidence cannot render an unambiguous contract ambiguous.[15]  "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered."[16]  A contract is not ambiguous if the language can be given a certain,

---

[12]*Trico Marine Servs., Inc. v. Stewart & Stevenson Technical Servs., Inc.*, 73 S.W.3d 545, 549 (Tex. App.–Houston [1st Dist.] 2002, orig. proceeding).

[13]*See Owen v. Hendricks*, 433 S.W.2d 164, 166-67 (Tex. 1968) (discussing the doctrine of incorporation by reference for purposes of the statute of frauds where one document is signed and another pertaining to the same transaction is unsigned).

[14]*In re C & H News Co.,* 133 S.W.3d 642, 645-46 (Tex. App.–Corpus Christi 2003, orig. proceeding).

[15]*Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996) ("McDade's interpretation, however, is parol evidence, and parol evidence of intent cannot be admitted for the purpose of creating an ambiguity."); *R&P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518-19 (Tex. 1980).

[16]*Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *Friendswood Dev.*, 926 S.W.2d at 282.

definite legal meaning or interpretation in light of the surrounding circumstances.[17] Even considering the evidence National Presort submits concerning negotiation of section 8.0, sections 1.1, 2.0 and 8.0 of the subcontract and paragraph MM of the prime contract are unambiguous;[18] therefore, we construe the subcontract as a matter of law without reference to parol evidence.[19]

We disagree with the district court's conclusion that the language in the prime contract, including paragraph MM, is inapplicable absent a conflict with the terms in the subcontract. Section 2.0 of the subcontract unambiguously incorporates by reference *all* of the provisions in the prime contract, and nothing in section 8.0 or any other provision of the subcontract excludes the termination provision in paragraph MM. Section 2.0 unambiguously provides that *all* of the provisions of the prime contract as incorporated into the subcontract are to be construed by substituting ACS when the prime contract references the OAG and National Presort when the prime contract references ACS. Therefore, the language in paragraph MM is for all intents, constructions and purposes an express provision

---

[17]*Coker,* 650 S.W.2d at 393; *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981) (stating that when construing a contract, the court may consult surrounding circumstances to determine whether the contract's language is ambiguous; if the language is unambiguous, the court can then confine itself to the writing, and parol evidence is not admissible to render a contract ambiguous if it is not ambiguous on its face).

[18]*Cf. Wood Motor Co. v. Nebel*, 238 S.W.2d 181, 184-85 (Tex. 1951) (concluding that an agreement with two termination clauses was not ambiguous; one clause resulted in termination without notice on the happening of specified events and the other provided for termination by either party without notice).

[19]*See Coker*, 650 S.W.2d at 393.

of the subcontract, regardless of whether it conflicts with another term in the subcontract.

Further, paragraph MM and section 8.0 can be harmonized and given effect, both generally and as applied in this case, without rendering either provision meaningless.[20] Section 8.0 allows ACS to terminate the subcontract *for any reason without notice*, independent of whether the OAG has terminated the prime contract in whole or part. If ACS terminates the subcontract without notice, it must reimburse National Presort for the specified expenses. Paragraph MM, on the other hand, provides temporal and substantive limitations on ACS's right to terminate the subcontract. First, ACS must determine that termination is in the State of Texas's interest. Second, ACS must give at least sixty days written notice. The notice period is essentially a proxy for a reasonable period of time for National Presort to consume existing supplies and recover expenses through performance of the contract. If ACS satisfies paragraph MM's preconditions to termination, ACS is thus relieved of liability for any expenses. There is nothing inconsistent about section 8.0 and paragraph MM. The contract may be terminated by satisfying either one. If paragraph MM's preconditions have been satisfied, ACS did not breach the contract. If those conditions have not been satisfied, section 8.0 will control.

The district court concluded that paragraph MM was not applicable to the relationship between National Presort and ACS, and therefore did not consider whether ACS's partial termination of the subcontract complied with paragraph MM's conditions. We cannot

---

[20]*See Nebel*, 238 S.W.2d at 184-85.

11

determine, based on the record before us, whether paragraph MM's requirements were met. We VACATE the judgment and REMAND this case to the district court for further proceedings.